# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**WILLIAM R. GROTH**
Fillenwarth Dennerline Groth & Towe, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**SUSAN M. SEVERTSON**
Law Office of Susan M. Severtson
Munster, Indiana

**BONNIE C. COLEMAN**
Hodges & Davis, P.C.
Merrillville, Indiana



FILED

Mar 15 2012, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

AYANNA WRIGHT and AMERICAN ) 
FEDERATION OF STATE, COUNTY, AND )
MUNICIPAL EMPLOYEES, COUNCIL 62, )
LOCAL 4009, AFL-CIO, )
            )
      Appellants-Respondents, )
            )
        vs. )     No. 45A04-1107-PL-362
            )
CITY OF GARY, INDIANA, )
            )
      Appellee-Petitioner. )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Jeffery J. Dywan, Special Judge
Cause No. 45D11-1007-PL-62

**March 15, 2012**

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

Following an arbitration award in favor of Appellants Ayanna Wright and the American Federation of State, County, and Municipal Employees, Council 62, Local 4009, AFL-CIO ("AFSCME Local 4009" or, collectively with Wright, "the Union"), Appellee City of Gary, Indiana ("the City"), petitioned the trial court to vacate the award. The Union counterclaimed for enforcement of the award. Both parties moved for summary judgment. After a hearing, the trial court granted the City's motion for summary judgment and denied the Union's motion for summary judgment, vacating the arbitrator's award. Concluding that the arbitrator did not exceed his powers by issuing the award to the Union, we reverse and remand.

## ISSUE

The Union raises two issues, which we consolidate and restate as: whether the trial court erred by granting the City's motion for summary judgment and denying the Union's motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

The City and AFSCME Local 4009 are parties to a collective bargaining agreement ("CBA"). In setting forth which employees are covered by the CBA, Section 1.1 states, "The Employer recognizes the Union as the sole and exclusive collective bargaining representative of employees not represented by another union. Excluded from the bargaining unit are . . . confidential employee[s] as defined in Gary City Ordinance 6243." Appellants' App. p. 3. Gary City Ordinance 6243, in turn, defines a confidential employee as "an employee whose unrestricted access to confidential personnel files or

2

whose functional responsibilities or knowledge in connection with the issues involved in dealings between the employer and its employees would make his membership in an employee organization incompatible with his official duties." Appellee's App. p. 86. The CBA further states, "This agreement is applicable to the employees of the City of Gary, Gary Park Department, and Gary Health Department, as noted in the job classifications in Schedule A who are members of the unit described in Section 1.1." Appellants' App. p. 3. Schedule A of the CBA lists the position of administrative assistant to the Gary Fire Civil Service Commission ("GFCSC") as a covered classification. *See id.* at 23.

The CBA's grievance procedure is "the exclusive method for resolution of disputes between an employee or [AFSCME Local 4009] and the Employer of all claims of breach and/or violation of the Agreement and applicable Personnel Rules." *Id.* at 8. The CBA further states that AFSCME Local 4009 may refer the grievance to arbitration if it is not settled in accordance with the grievance procedure. Under an express provision of the CBA, "[t]he arbitrator shall have no right to amend, nullify, ignore, add to, or subtract from the provisions of this Agreement." *Id.* at 10. According to the CBA, the arbitrator's decision is binding on both parties.

On December 10, 2008, the City informed Wright, a City employee as well as the president of AFSCME Local 4009, that her City position was being eliminated due to economic circumstances. The CBA sets forth a "bumping" process in the event of workforce reductions, in which an employee whose position is being eliminated may replace an employee with lower seniority. A seniority list is to be provided to AFSCME

3

Local 4009's president every six months, and an employee's standing on the list will be final unless challenged within thirty days after the list is posted on AFSCME Local 4009's bulletin boards.

The City's human resources director, Shirley Walls, gave AFSCME Local 4009 a seniority list on December 12, 2008. As the City's human resources director, Walls was also the custodian of the City's employee personnel records. Walls certified the seniority list as true to the best of her knowledge. The list indicated Wright's hire date as November 1, 1994. The list indicated the hire date of Pamela Oliver, the GFCSC's administrative assistant, as June 26, 1995. On December 18, 2008, Wright elected to bump into Oliver's position. At the instruction of the City's human resources department, the GFCSC's chairman, Dwight Gardner, interviewed Wright on December 30, 2008. Gardner determined that she was fully qualified for the GFCSC's administrative assistant position.

Walls spoke with Wright and followed up that conversation with a letter, dated December 30, 2008, which indicated that Wright could not bump into the GFCSC's administrative assistant position:

> [T]he City's position is that the Administrative Assistant position for the Fire Commission is non union. Notwithstanding that the position is listed in the bargaining unit contract, after a thorough review, it is determined that the duties are of an administrative and confidential nature.

Appellee's App. p. 100. At a January 2, 2009 meeting, the GFCSC voted unanimously to retain Oliver because she had been a good employee.

4

Wright declined an invitation to bump into another position. The Union filed a grievance on her behalf, which requested that Wright be permitted to bump into the GFCSC's administrative assistant position. The City denied the grievance. The Union and the City subsequently submitted the matter to arbitration pursuant to the CBA. In December 2009, an evidentiary hearing was held before Arbitrator Edward P. Archer. At the outset of the hearing, the parties stipulated that the issue to be decided was whether the City violated the CBA by denying Wright's request to bump into the GFCSC's administrative assistant position, and if so, what should be the remedy. During opening statements, the City asserted that the GFCSC "is semi autonomous to the Civil City," *id.* at 18, the GFCSC did not sign the CBA, and the CBA has no effect on the GFCSC's administrative assistant position.

At the hearing, the City contended for the first time that Oliver's hire date on the seniority list was incorrect and that her correct hire date was earlier than Wright's. Oliver testified that she has been a member of AFSCME Local 4009 since October 2003.[1] She also stated that she had never seen nor asked to see any prior seniority lists. The GFCSC's attorney, Clyde Compton, testified that Gary City Ordinance 5882 provides that the GFCSC is to select its own administrative assistant. He also stated that the files maintained by the GFCSC's administrative assistant relate to the City's firefighters. Gardner testified that the City's firefighters are represented by the Professional Firefighters Association and not an AFSCME local.

---

[1] At the hearing, Oliver testified that she looked through her paystubs the night before and realized that the City recently stopped deducting union dues from her paychecks.

Arbitrator Archer issued a decision and award in favor of the Union in February 2010. In his decision, Arbitrator Archer determined that the GFCSC's administrative assistant position was not a confidential position within the exclusionary language of Section 1.1 and was covered by the CBA. He also noted that because he has no authority to modify or ignore the CBA, regardless of whether the CBA conflicts with a city ordinance, the GFCSC's administrative assistant position was listed in the CBA as part of the bargaining unit and therefore subject to the bumping process. Arbitrator Archer acknowledged the City's argument that Oliver's correct hire date was earlier than Wright's but found that because there was no evidence that Oliver timely challenged the incorrect hire date, it was final for bumping purposes. Arbitrator Archer concluded that the City violated the CBA by denying Wright's request to bump into the GFCSC's administrative assistant position. He ordered Wright to be placed in that position and for Oliver to be permitted to engage in the bumping process.

In May 2010, the City filed with the trial court a petition to vacate the arbitration award. The Union counterclaimed for enforcement of the award. The parties filed cross-motions for summary judgment. In June 2011, the trial court granted the City's motion for summary judgment and denied the Union's motion for summary judgment. In its order, the trial court found that the GFCSC is a separate political entity and that the City's execution of the CBA did not subject the GFCSC to the CBA. After citing Indiana Code section 34-57-2-13(a)(5) (1998), the trial court concluded that "[t]he Arbitrator went beyond the parties who agreed to the arbitration and ordered a remedy directed against a non-party, the GFCSC." Appellants' App. p. 73. The trial court also concluded

6

that Arbitrator Archer exceeded his powers under Indiana Code section 34-57-2-13(a)(3) by issuing an award that disregarded the city ordinance providing that the GFCSC is to select its own administrative assistant, relied on Oliver's incorrect hire date, and determined that the GFCSC's administrative assistant position was not confidential. The Union now appeals.

## DISCUSSION AND DECISION

The Union contends that the trial court erred by granting the City's motion for summary judgment and denying the Union's motion for summary judgment. When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269-70 (Ind. 2009). All facts established by the designated evidence and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind. 2007). The fact that the parties filed cross-motions for summary judgment does not alter our standard of review. *Nasser v. St. Vincent Hosp. & Health Servs.*, 926 N.E.2d 43, 47 (Ind. Ct. App. 2010), *trans. denied*. We consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* In the summary judgment context, the entry of specific facts and conclusions aids our review by providing us with a statement of reasons for the trial court's decision, but it has no other effect. *City of New Albany v. Cotner*, 919 N.E.2d 125, 131 (Ind. Ct. App. 2009), *trans. denied*.

7

The purpose of arbitration is to afford parties the opportunity to reach a final disposition of differences in an easier, more expeditious manner than by litigation. *Bopp v. Brames*, 677 N.E.2d 629, 631 (Ind. Ct. App. 1997). Courts may not review the merits of arbitration awards de novo. *See id.* at 634. Relitigation of the merits of arbitration awards by the courts would only serve to frustrate the purposes of arbitration. *Id.*

Indiana's Uniform Arbitration Act provides a mechanism for enforcing agreements to arbitrate and for securing judicial review and enforcement of awards made. *Sch. City of E. Chicago, Ind. v. E. Chicago Fed'n of Teachers, Local No. 511, A.F.T.*, 622 N.E.2d 166, 168 (Ind. 1993). Judicial review of an arbitration award is extremely narrow in scope. *Id.* An award should only be set aside when one of the grounds specified by the Uniform Arbitration Act for vacation of an award is shown. *Id.* A party who seeks to vacate an arbitration award under the Uniform Arbitration Act bears the burden of proving the grounds to set the award aside. *Id.* Our review of an arbitration award is limited to determining whether the party who seeks to vacate the award has established any of the grounds for challenge permitted by the Uniform Arbitration Act.

The trial court here vacated the arbitration award on two grounds provided in Indiana's Uniform Arbitration Act:

> Upon application of a party, the court shall vacate an award where:
> . . .
> (3) the arbitrators exceeded their powers and the award can not be corrected without affecting the merits of the decision upon the controversy submitted;
> . . .
> (5) there was no arbitration agreement and the issue was not adversely determined in proceedings under section 3 of this chapter

> (or IC 34-4-2-3 before its repeal), and the party did not participate in the arbitration hearing without raising the objection;
>
> but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

Ind. Code § 34-57-2-13(a). We first discuss the trial court's conclusion that Arbitrator Archer could not order a remedy against the GFCSC under Indiana Code section 34-57-2-13(a)(5). We then address whether Arbitrator Archer exceeded his powers under Indiana Code section 34-57-2-13(a)(3) by finding that the GFCSC's administrative assistant position was covered by the CBA and by finding that Oliver's applicable hire date for bumping purposes was the date indicated on the seniority list.

## I. REMEDY AGAINST THE GFCSC

In its summary judgment memorandum to the trial court, the City argued that the arbitration award should be vacated pursuant to Section 34-57-2-13(a)(5) because there was no arbitration agreement between GFCSC and AFSCME Local 4009. The trial court apparently accepted this argument. In the portion of its order discussing Section 34-57-2-13(a)(5), the trial court found that Arbitrator Archer "went beyond the parties who agreed to the arbitration and ordered a remedy directed against a non-party, the GFCSC." Appellants' App. p. 73.

According to the language of Section 34-57-2-13(a)(5), a party challenging an award under that provision must show, among other things, that there was no arbitration agreement. Although Section 34-57-2-13(a)(5) does not specify who must have an arbitration agreement, we read the provision as permitting vacation of an award where there was no arbitration agreement between the parties to the arbitration. This conclusion

9

is in line with our caselaw requiring a party seeking to compel arbitration to demonstrate that an enforceable arbitration agreement exists and that the disputed matter is the type of claim that the parties intended to arbitrate. *See, e.g.*, *Precision Homes of Ind., Inc. v. Pickford*, 844 N.E.2d 126, 130 (Ind. Ct. App. 2006), *trans. denied*. The parties before Arbitrator Archer were the City and the Union. Because there is no question that the CBA between the City and AFSCME Local 4009 included an agreement to arbitrate grievances not settled in accordance with the CBA's grievance procedures, we conclude that any argument under Section 34-57-2-13(a)(5) must fail.

It appears, however, that the trial court's order in this regard is actually a conclusion that Arbitrator Archer exceeded his powers under Section 34-57-2-13(a)(3) because he "ordered a remedy directed against a non-party, the GFCSC." Appellants' App. p. 73. Indeed, regardless of how the City framed its argument, the crux of its claim appears to be concerned with the fact that Arbitrator Archer's award would directly affect the GFCSC, which the City asserts was not bound by the CBA. We address this issue in Part II.A.

## II. POSITION IS COVERED BY THE CBA

The Union contends that the trial court erred by concluding that Arbitrator Archer exceeded his powers by finding that the GFCSC's administrative assistant position is covered by the CBA.

A factual question determined in arbitration cannot be relitigated. *Fiducial Inv. Advisors v. Patton*, 900 N.E.2d 53, 64 (Ind. Ct. App. 2009); *see United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38, 108 S. Ct. 364, 98 L. Ed. 2d

10

286 (1987) ("Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. . . . To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.").

An arbitrator's mistake of law or erroneous interpretation of the law does not constitute an act in excess of the arbitrator's powers. *Fiducial Inv. Advisors*, 900 N.E.2d at 60. An arbitrator's manifest disregard of the law, however, is an exception to this general rule. *Sw. Parke Educ. Ass'n v. Sw. Parke Cmty. Sch. Trs. Corp., Bd. of Sch. Trs.*, 427 N.E.2d 1140, 1147 (Ind. Ct. App. 1981). An arbitrator shows manifest disregard of the law when he understands and correctly states the law but then proceeds to disregard it. *Id.* "The application of this exception . . . is severely limited." *Id.*

In the context of arbitration pursuant to a collective bargaining agreement, an arbitrator's award is enforceable so long as it draws its essence from the collective bargaining agreement. *Citizens Gas & Coke Util. v. Local Union No. 1400, Int'l Bhd. of Elec. Workers*, 874 N.E.2d 391, 397 (Ind. Ct. App. 2007). A court will vacate an award only when the arbitrator's words manifest an infidelity to this obligation. *Id.* It is only when the arbitrator must have based his award on some body of thought, feeling, policy, or law that is outside the contract and not incorporated in it by reference that the award can be said not to draw its essence from the collective bargaining agreement. *Id.* We resolve any reasonable doubt regarding whether an award draws its essence from a

11

collective bargaining agreement in favor of enforcing the award. *Id.* We will therefore vacate an award only if there is no possible interpretive route to the award. *Id.*

Section 1.1 of the CBA indicates that AFSCME Local 4009 is the collective bargaining representative of employees not represented by another union. One group of employees excluded, however, are confidential employees. Further, the CBA "is applicable to the employees of the City of Gary, Gary Park Department, and Gary Health Department, as noted in the job classifications in Schedule A who are members of the unit described in Section 1.1." Appellants' App. p. 3. Schedule A includes the GFCSC's administrative assistant as a covered classification. Arbitrator Archer considered all of these factors as well as Ordinance 5882 when determining whether the GFCSC's administrative assistant position was covered by the CBA.

## A. SECTION 1.1 AND SCHEDULE A

Arbitrator Archer found that "[t]he [GFCSC] Administrative Assistant was paid out of City funds and this position was not one represented by another union." *Id.* at 36. He also found that "the parties expressly listed this position as one covered by the collective bargaining agreement." *Id.* Specifically, as to Schedule A, Arbitrator Archer acknowledged that a number of the jobs listed were no longer in the bargaining unit – some jobs no longer existed and one job was removed by mutual agreement. He found, however, that the list was otherwise accurate:

> Other than these changes, the list remains a valid list of positions included in the unit. The [GFCSC] Administrative Assistant job has not been eliminated. Nor have the parties agreed to its exclusion from the unit. Accordingly, at least until the City's assertion to the contrary on December

12

30, 2008, that position had been accepted by all as one included in the bargaining unit.

*Id.* at 37.

Despite this finding, the City argued and the trial court agreed that the former attorney for the City erroneously included the GFCSC's administrative assistant position in Schedule A. Arbitrator Archer heard the evidence regarding the City's former attorney but ultimately decided that the position was included in the bargaining unit. We conclude that the trial court erred by substituting its judgment for that of the arbitrator.

As noted above, the City nonetheless argues that the GFCSC is a separate entity and should not be bound by the City's execution of the CBA. The City cites *Eljer Manufacturing, Inc. v. Kowin Development Corp.*, 14 F.3d 1250 (7th Cir. 1994), for support. In that case, Kowin Development and Simonds Division, a subsidiary of Eljer Manufacturing, formed Kowin-Simonds through an agreement. Kowin and Simonds agreed to submit any disputes arising under the agreement to arbitration. When a dispute arose, Eljer and Kowin participated in arbitration pursuant to the Kowin-Simonds agreement. Eljer was ordered to pay Kowin, among other awards, one million dollars in damages. However, that award represented damages suffered by a third party, the Bank of China, which had already sued Eljer for fraud. The Seventh Circuit stated, "Though the arbitration clause is broadly worded, it cannot be construed to delegate to the arbitrator the power to arbitrate disputes between Eljer and a third party. The language of the clause limits arbitration to disputes arising under the contract." *Id.* at 1256. The court therefore concluded that the arbitrator exceeded his powers by awarding Kowin

13

damages suffered by a third party and vacated the one million dollar damage award. *Id.* at 1256-57.

Contrary to the City's assertion, the holding in *Eljer* supports Arbitrator Archer's actions here. The issue of whether the GFCSC was properly included in the CBA by virtue of the fact that it is a department of the City or whether it was separate from the City and did not assent to being included in the CBA may be an issue to be resolved between the GFCSC and the City. That dispute, however, is outside the scope of the CBA and outside the scope of the issue stipulated by the City and the Union. The sole issue before Arbitrator Archer was whether the City violated the CBA by denying Wright's request to bump into the GFCSC's administrative assistant position, and if so, what should be the remedy. As determined by Arbitrator Archer, the City and AFSCME Local 4009's own negotiated terms of the CBA provided that the GFCSC's administrative assistant position was a covered classification. The negotiated terms of the CBA therefore subjected that position to the bumping process. We will not second-guess this determination.

Moreover, although the City attempts to compare the arbitrator's award to Kowin for damages suffered by a third party to Arbitrator Archer's award here that affects the GFCSC, the facts of *Eljer* are distinguishable. In *Eljer*, "[t]he transaction between the Bank of China and Eljer was completely separate from the Kowin-Simonds agreement and was therefore outside the scope of the arbitration clause." *Id.* In contrast, the GFCSC's administrative assistant position was not completely separate from the CBA because the CBA specifically provided that the position was a covered classification. *See*

14

*Citizens Gas*, 874 N.E.2d at 400 (distinguishing *Eljer* because "the life insurance proceeds are not completely separate from the CBA because the CBA specifically provided for life insurance as a fringe benefit"). Stated differently, the question as to whether the City harmed the GFCSC by including the position in the CBA is a dispute between the City and the GFCSC and outside the scope of the CBA. But because the position was included in the agreement between the City and the Union, Arbitrator Archer did not exceed his powers by concluding that it was part of the bargaining unit.

## B. EXCLUSION FOR "CONFIDENTIAL EMPLOYEES"

Arbitrator Archer also considered whether the GFCSC's administrative assistant was a "confidential employee" within the exclusionary language of Section 1.1. A confidential employee is "an employee whose unrestricted access to confidential personnel files or whose functional responsibilities or knowledge in connection with the issues involved in dealings between the employer and its employees would make his membership in an employee organization incompatible with his official duties." Appellee's App. p. 86. In his decision, Arbitrator Archer concluded that the GFCSC's administrative assistant's membership in AFSCME Local 4009 was not incompatible with the official duties of the GFCSC's administrative assistant because the position dealt with employees who were members of a different union:

> The [GFCSC] Administrative Assistant has unrestricted access to personnel files of firefighters, but firefighters are represented by a different union. Accordingly, that access would not make the employee's membership in [AFSCME Local 4009] incompatible with the employee's official duties.

15

Appellants' App. pp. 35-36. He therefore concluded that there was no merit to the City's argument that the position was a "confidential" position to be excluded from the CBA.

The trial court disagreed that the GFCSC's administrative assistant was a "confidential employee." In its reasoning, the court stated only that the GFCSC considers the position "confidential" and that the GFCSC's rules and regulations state that the administrative assistant is required to create and maintain all sorts of files, including personnel files. The court said nothing about the significance to Arbitrator Archer that the GFCSC's administrative assistant's unrestricted access to files related only to employees of a different union. We conclude that the trial court was not at liberty to reverse the arbitration award merely because it disagreed with Arbitrator Archer's determinations. Arbitrator Archer's decision shows a careful consideration of whether the position was "confidential" and does not evince an infidelity to his obligations.

## C. GARY CITY ORDINANCE 5882

The parties also disagree on whether Arbitrator Archer manifestly disregarded Gary City Ordinance 5882 and thus exceeded his powers. At the arbitration hearing, the City argued that Ordinance 5882 provides that the GFCSC is to appoint its own administrative assistant and thus precludes a conclusion that that position was covered by the CBA. Ordinance 5882 provides in pertinent part:

> [The GFCSC] shall appoint a secretary[2] and chief examiner, who shall keep the records of the commission, preserve all reports made to it, superintend and keep a record of all examinations held under its direction, and perform such other duties as the commission may prescribe.

---

[2] There is no dispute that the "secretary" in Ordinance 5882 refers to the GFCSC's administrative assistant position.

16

The secretary and chief examiner shall be appointed as a result of competitive examination, which examination may be either original and open to all properly qualified citizens of the state, or promotional and limited to persons already in the service of the fire department, as the commission may decide.

Appellee's App. pp. 63-64. The CBA, the City argued, is in conflict with the ordinance because it provides a bumping process that could replace the GFCSC's administrative assistant without the GFCSC's approval.

Arbitrator Archer acknowledged this ordinance as well as the Union's argument that Ordinance 6243, which authorized collective bargaining for City employees, prevails over Ordinance 5882. However, he stated that he was "not persuaded that, as an arbitrator, I have any authority to interpret and apply state statutes or city ordinances. Arbitrators are to enforce the negotiated terms of the parties' collective bargaining agreement." Appellants' App. p. 39. He then indicated that he was without authority to modify or ignore the CBA's express inclusion of the GFCSC's administrative assistant position within its covered classifications:

[R]egardless of whether there is a conflict between the parties' collective bargaining agreement and a city ordinance, I have no authority to modify or ignore the collective bargaining agreement. Under that agreement, the [GFCSC] Administrative Assistant position was clearly listed as included in the bargaining unit and, as such, was subject to the bumping process set forth in [the CBA].

*Id.*

The trial court concluded that Arbitrator Archer exceeded his powers because he "knew of Ordinance 5882 but intentionally disregarded it, writing that he had no authority to interpret and apply state statutes and city ordinances." *Id.* at 73-74. We

17

disagree. An arbitrator is limited by the bounds of the agreement from which he draws his authority and is expected to be aware of those limits. *Bopp*, 677 N.E.2d at 632. An arbitrator exceeds his powers if his decision is based solely on the arbitrator's view of the requirements of enacted legislation rather than on an interpretation of the collective bargaining agreement. *See Roadmaster Corp. v. Prod. & Maint. Employees' Local 504, Laborers' Int'l Union of N. Am., AFL-CIO*, 851 F.2d 886, 888 (7th Cir. 1988). In *Roadmaster Corporation*, the collective bargaining agreement contained a "rollover" provision stating that the agreement would remain in effect from year to year unless either party served upon the other party written notice of its desire to amend or terminate the agreement at least sixty days before the date it wished to do so. Pursuant to this provision, the employer sent a timely letter indicating that it wished to terminate the agreement. The employer also refused to bargain with anyone regarding a possible new contract. Upon being submitted to arbitration, the arbitrator determined that the employer's letter was void because the employer violated a provision of the National Labor Relations Act by refusing to bargain with the unions. The arbitrator thus concluded that the "rollover" provision renewed the collective bargaining agreement's terms for another year.

The Seventh Circuit disagreed, noting that an arbitrator has no general authority to invoke public laws that conflict with the bargain between the parties. The court therefore concluded that the arbitrator exceeded his powers by going beyond the agreement's terms to consider the National Labor Relations Act: "When a contract, such as the one involved here, specifically limits an arbitrator's subject matter jurisdiction, the arbitrator should

18

restrict his consideration to the contract, even if such a decision conflicts with federal statutory law." *Id.* at 889.

Here, a provision of the CBA provides that "[t]he arbitrator shall have no right to amend, nullify, ignore, add to, or subtract from the provisions of this Agreement." Appellants' App. p. 10. Arbitrator Archer acknowledged Ordinance 5882 but ultimately concluded that his job was to enforce the CBA and that he had no authority to modify or ignore the express inclusion of the GFCSC's administrative assistant position within its covered classifications. Arbitrator Archer did not manifestly disregard Ordinance 5882 but instead acknowledged that the bounds of the CBA prevented him from considering it. His decision not to consider Ordinance 5882 thus does not establish that he exceeded his powers under Indiana Code section 34-57-2-13(a)(3). We therefore conclude that Arbitrator Archer did not exceed his powers by concluding that the GFCSC's administrative assistant position was covered by the CBA.

Moreover, we conclude that Ordinance 5882 does not preclude this Court's enforcement of the CBA. Generally, a contract made in contravention of a statute is void. *Norlund v. Faust*, 675 N.E.2d 1142, 1150 (Ind. Ct. App. 1997), *clarified on reh'g*, 678 N.E.2d 421 (1997), *trans. denied*. However, a contract will not automatically be held void merely because it violates a statute. *Id.* Municipal ordinances have the same force and effect as statutes in the localities in which they apply. *French v. Bristol Myers Co.*, 574 N.E.2d 940, 943 (Ind. Ct. App. 1991), *trans. denied*.

Here, the City entered into an agreement that provides for an outcome contrary to an ordinance that it promulgated and retains. The City now seeks to avoid the

19

consequences of arbitration under that agreement. There is a strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties. *Cont'l Basketball Ass'n v. Ellenstein Enters.*, 669 N.E.2d 134, 139 (Ind. 1996). Despite this strong presumption, courts have refused to enforce private agreements on public policy grounds when they contravene statute, clearly tend to injure the public in some way, or are otherwise contrary to the declared public policy of Indiana. *Id.*; *Ind. Dep't of Transp. v. Shelly & Sands, Inc.*, 756 N.E.2d 1063, 1073 (Ind. Ct. App. 2001), *trans. denied*. "[B]ecause we value the freedom to contract so highly, we will not find that a contract contravenes a statute unless the language of the implicated statute is clear and unambiguous that the legislature intended that the courts not be available for either party to enforce a bargain made in violation thereof." *Ellenstein Enters.*, 669 N.E.2d at 140.

In *Ellenstein Enterprises*, our Supreme Court noted that a state franchise statute did not expressly require that its violation renders a contract void and instead provided remedial measures to be invoked in the event of a violation. The Court therefore concluded that the legislature did not intend that every contract made in violation of the statute be void. Thus, to determine whether the franchise statute rendered a franchise agreement void, the Court applied a balancing test it had previously used to resolve whether a contract was void as contrary to public policy. *Id.* (citing *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1130 (Ind. 1995)). The factors the Court considered were: (1) the nature of the subject matter of the contract; (2) the strength of the public policy underlying the statute; (3) the likelihood that refusal to enforce the bargain or term will further that policy; (4) how serious or deserved would be the forfeiture suffered by the

20

party attempting to enforce the bargain; and (5) the parties' relative bargaining power and freedom to contract. *Id.*

We must first determine whether the CBA contravenes Ordinance 5882. Like the statute in *Ellenstein Enterprises*, Ordinance 5882 does not expressly require that its violation renders a contract void. Like the statute in *Ellenstein Enterprises*, nowhere in Ordinance 5882 does it clearly and unambiguously provide for the unavailability of the courts—or here, arbitration—to enforce an agreement contrary to its provisions. The CBA therefore does not contravene Ordinance 5882, and the balancing test our Supreme Court applied in *Ellenstein Enterprises* likewise applies here.

Applying that test, we cannot conclude that enforcement of the CBA provisions subjecting the GFCSC's administrative assistant position to the bumping process is so contrary to the public policy interest of Ordinance 5882 that the CBA provisions are void. The contract is a collective bargaining agreement between the City and AFSCME Local 4009, and there is no suggestion of unequal bargaining power between the parties. Ordinance 5882 reflects a valid public policy of hiring a qualified individual for the GFCSC's administrative assistant position, and refusing to allow Wright to bump into the position does nothing to further and may even diminish that policy as the GFCSC's chairman determined that Wright was fully qualified for the position. Further, considering that the City promulgated Ordinance 5882 and yet freely bargained for the GFCSC's administrative assistant position to be subject to the bumping process, refusing to allow Wright to bump into the position would certainly be undeserved. Simply put, there is no contention that the CBA provides for an unqualified individual to hold the

21

administrative assistant position established by Ordinance 5882. Nor is there any contention that Wright is unqualified for the position under the provisions of Ordinance 5882, though she arguably holds less seniority than Oliver, the GFCSC's preferred employee. The CBA provisions subjecting the GFCSC's administrative assistant position to the bumping process are thus not void.

### III. OLIVER'S HIRE DATE FOR BUMPING PURPOSES

The Union also contends that the trial court erred by concluding that Arbitrator Archer exceeded his powers by finding that Oliver's hire date for bumping purposes was later than Wright's. The seniority list provided to Wright and certified by Walls as true to the best of her knowledge indicated Wright's hire date as November 1, 1994 and Oliver's hire date as June 26, 1995. At the arbitration hearing, evidence was presented that Oliver's actual hire date was in 1989.

Arbitrator Archer noted the provision of the CBA that provides that an employee's standing on the seniority list will be final unless challenged within thirty days after the list is posted on AFSCME Local 4009's bulletin boards. He then concluded, "Consistent with this provision, the failure of any evidence of a timely Oliver protest of her stated hire date in the bump list (which was apparently assembled by Walls from prior posted information), resulted in her hire date, for bumping purposes at least, becoming final." Appellants' App. p. 40.

The trial court found that Oliver never received notice of the incorrect hire date and therefore could not protest. We acknowledge that the designated summary judgment materials provided to us on appeal do not show that Wright, as the president of AFSCME

22

Local 4009, posted the seniority list on AFSCME Local 4009's bulletin boards. Nevertheless, Oliver testified at the arbitration hearing that she had been a member of AFSCME Local 4009 since October 2003 but had never seen nor asked to see any prior seniority lists. Arbitrator Archer was entitled to conclude from the evidence that Wright's seniority was greater than Oliver's for bumping purposes.[3] *See Eljer Mfg., Inc.*, 14 F.3d at 1254 ("Nor does an insufficiency of evidence supporting the decision permit us to disturb the arbitrator's order. Arbitration does not provide a system of 'junior varsity trial courts' offering the losing party complete and rigorous *de novo* review.").

Finally, the City argues that we should affirm the trial court's vacation of the award on public policy grounds. A court may refuse to enforce an arbitrator's award under a collective bargaining agreement because it is contrary to public policy. *See Fort Wayne Educ. Ass'n v. Fort Wayne Cmty. Sch.*, 753 N.E.2d 672, 677 (Ind. Ct. App. 2001) (quoting *Misco, Inc.*, 484 U.S. at 42). Any such public policy must be explicit, well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000).

The City asserts that because Wright failed to post the seniority list and Oliver therefore had no notice that her hire date was incorrectly listed, it would violate public policy to allow Wright to bump into Oliver's position. The City has failed to show that

---

[3] Arbitrator Archer acknowledged that personnel records of the City established that Oliver was initially hired in 1989. Nevertheless, because he found that Oliver failed to timely protest her stated hire date, we decline to address the City's argument that seniority consists of an employee's total continuous service.

this argument is anything more than a general consideration of supposed public interests. *See Misco, Inc.*, 484 U.S. at 44 (asserted public policy against the operation of dangerous machinery while under the influence of drugs was not shown to be well-defined and dominant). The City has thus failed to show that the award violates public policy.

Arbitrator Archer's findings that the GFCSC's administrative assistant position was covered by the CBA and that Wright had greater seniority for bumping purposes were a proper exercise of his powers. He therefore did not exceed his powers by ordering Wright to be placed in Oliver's position as the GFCSC's administrative assistant. In short, the trial court essentially conducted an improper de novo review and erred by concluding that Arbitrator Archer exceeded his powers merely because he did not reach the same conclusion as the trial court. *See id.* at 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.").

## CONCLUSION

For the reasons stated, we reverse the trial court's order granting the City's summary judgment motion and denying the Union's summary judgment motion and remand with instructions to enter summary judgment for the Union.

Reversed and remanded.

BAILEY, J., concurs.

BRADFORD, J., dissents with separate opinion.

24

# IN THE
# COURT OF APPEALS OF INDIANA

AYANNA WRIGHT and AMERICAN )
FEDERATION OF STATE, COUNTY, AND )
MUNICIPAL EMPLOYEES, COUNCIL 62, )
LOCAL 4009, AFL-CIO, )
  )
    Appellants-Respondents, )
  )
      vs. )    No. 45A04-1107-PL-362
  )
CITY OF GARY, INDIANA, )
  )
    Appellee-Petitioner. )

**BRADFORD, Judge, dissenting.**

I conclude that I cannot concur with the approach taken by the majority. I cannot agree with either the conclusion that we may not reach the legality of the CBA or the conclusion that the CBA's conflict with Gary Ordinance 5882 should be resolved in favor of enforcing the CBA. Consequently, I respectfully dissent.

I agree with the majority that the arbitrator was bound by the terms of the CBA and could not take Ordinance 5882 into account when rendering his decision. The arbitrator is a creation of the contract whose powers are absolutely limited by the contract. This does not mean, however, that *we* cannot take Ordinance 5882 into account. The enforceability of the CBA is a different question than whether the arbitrator

25

exceeded his authority under the CBA. The Florida Court of Appeals has recognized this distinction in two cases I believe to be on point. *See Jupiter Med. Ctr., Inc. v. Visiting Nurse Ass'n of Florida, Inc.*, 72 So. 3d 184, 186 (Fla. Dist. Ct. App. 2011), *reh'g denied* (Nov. 10, 2011) ("If the contract is found to be illegal, a prior arbitration will not prevent the trial court from vacating the award."); *Party Yards, Inc. v. Templeton*, 751 So. 2d 121, 123 (Fla. Dist. Ct. App. 2000) ("A claim that a contract is illegal … is not a matter which can be determined by an arbitrator. An arbitrator cannot order a party to perform an illegal act."). In my view, the City can challenge the underlying CBA on appeal just like any other contract, and if it runs afoul of Ordinance 5882, we should refuse to enforce it to that extent.

The test for evaluating such questions was provided by the Indiana Supreme Court in the case of *Continental Basketball Ass'n, Inc. v. Ellenstein Enterprises, Inc.*, 669 N.E.2d 134 (Ind. 1996). Although there is a strong presumption of the enforceability of contracts in Indiana, "courts have refused to enforce private agreements on public policy grounds in three types of situations: (i) agreements that contravene statute[4]; (ii) agreements that clearly tend to injure the public in some way; and (iii) agreements that are otherwise contrary to the declared public policy of Indiana." *Id*. at 139. If a contract contravenes a statute or ordinance, it (or the offending provisions) is declared void. However, "because we value the freedom to contract so highly, we will not find that a contract contravenes a statute unless the language of the implicated statute is clear and

---

[4] "Municipal ordinances have the same local force and effect as statutes[,]" *French v. Bristol Myers Co.*, 574 N.E.2d 940, 943 (Ind. Ct. App. 1991), and so law relating to statutes has equal applicability to ordinances. For purposes of this dissent, the terms will be used interchangeably.

26

unambiguous that the legislature intended that the courts not be available for either party to enforce a bargain made in violation thereof." *Id*. at 140.

Here, Ordinance 5882, despite making it abundantly clear that the GFCSC may choose its own secretary, nonetheless contains no clear or unequivocal language indicating that contracts made contrary to its terms are void or unenforceable. As such, we are required to analyze the CBA using the following considerations: "(i) the nature of the subject matter of the contract; (ii) the strength of the public policy underlying the statute; (iii) the likelihood that refusal to enforce the bargain or term will further that policy; (iv) how serious or deserved would be the forfeiture suffered by the party attempting to enforce the bargain; and (v) the parties' relative bargaining power and freedom to contract." *Id*. at 140.

This is where my path diverges again from the majority's, who conclude that the CBA should be enforced instead of Ordinance 5882. Applying the *Ellenstein* factors, I would conclude that Ordinance 5882 trumps the CBA. While some of the factors do not seem to lean one way or the other in this case, as a general rule I do not believe that it is for us to say that enforcement of a duly-enacted and constitutional ordinance is against public policy when the ordinance is, in fact, the *embodiment* of public policy. Put another way, because the stated public policy of Gary is that the GFCSC may hire the secretary of its choice, to rule in favor of enforcement of the CBA is to thwart public policy rather than to serve it. "[P]ublic policy is a matter for the General Assembly subject only to constitutional limitations on legislative authority.… In the absence of any constitutional challenge, the wisdom of the policy reflected in the statute is not for us to

27

resolve." *Murray v. Conseco, Inc.*, 795 N.E.2d 454, 457 (Ind. 2003). While this result may seem slightly unfair to Wright, who was merely following the bumping procedure provided for in the CBA, in my view that unfairness is not nearly enough to overcome the public policy as stated in Ordinance 5882. I believe it should be a very rare case in which we conclude that a contractual provision be enforced despite conflicting with a statute or ordinance, and I see nothing in the record to suggest that this should be one of those cases.

I respectfully dissent.