In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 21-1423

IN RE:

DONALD WAYNE HARSHAW,

*Debtor*,


ELIZABETH ANNE HARSHAW,

*Plaintiff-Appellant*,

*v.*

DONALD WAYNE HARSHAW,

*Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:19-cv-00144-HAB — **Holly A. Brady**, *Judge*.

_____

ARGUED OCTOBER 29, 2021 — DECIDED FEBRUARY 23, 2022

_____

Before SYKES, *Chief Judge,* and KANNE and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge*. This bankruptcy appeal turns on the familiar difference between a judgment for money and one that awards an interest in specific property. The case

arises from an unusual arbitration award that was enforced by Indiana state courts to resolve disputes between an unmarried couple. Elizabeth Anne Harshaw and Donald Harshaw married and divorced. They later reconciled but did not remarry, setting the stage for this legal dispute. The couple then separated again. Because divorce laws no longer applied to the couple, Anne sued Donald in state court under equitable theories to seek redress for her contributions to the relationship during their second period together.

The two agreed to binding arbitration. The arbitrator awarded Anne $435,000, half the increase in value of Donald's retirement savings during their years of unmarried cohabitation. Donald appealed the award but lost in the state courts. After that loss became final, Donald declared bankruptcy and sought to discharge the arbitrator's award. He asserted that the award was for a money judgment and thus subject to discharge in the bankruptcy. Anne opposed his claim, arguing that the arbitrator had awarded her an interest in specific property so that the award could not be discharged in Donald's bankruptcy. The bankruptcy court sided with Anne. The district court reversed and sided with Donald. We agree with the district court and affirm its judgment.

I.  *Facts and Procedural History*

A.  *The Separation*

Anne and Donald have a long history together. They were married for twenty-five years but divorced in 1996. They got back together shortly after but separated again in 2013. Since they had not remarried, Anne could not secure relief through the familiar channels of divorce law. Instead, she sued Donald in state court under equitable theories of express or implied

contract, unjust enrichment, and *quantum meruit*. Anne's claims were based on her contributions to the relationship during their approximately sixteen-year reconciliation, including quitting her job to take care of the home and to take care of Donald's nieces and grandson, who have special needs, as well as Donald himself, who suffered from various health issues.

B. *The Arbitration*

Anne and Donald agreed to submit the dispute to binding arbitration. The arbitrator issued a final award with detailed findings about Anne's contributions to the relationship. Indiana common law permits relief for an unmarried person upon separation under equitable principles when the previous relationship shared many of the characteristics of a traditional marriage. See, e.g., *Glasgo v. Glasgo*, 410 N.E.2d 1325, 1330–32 (Ind. App. 1980). Finding those characteristics present here, the arbitrator determined that Donald was liable to Anne.

Next, the arbitrator turned to the question of the remedy. The arbitrator's remedial language led to this appeal, which turns on the difference between a money judgment and an interest in specific property. The award said that Anne was awarded the sum of $435,000, but also included language referring to Donald's retirement savings accounts and a Qualified Domestic Relations Order, as discussed below. The Lake County Superior Court entered judgment on the arbitration award. Donald appealed, and the Indiana Court of Appeals affirmed in relevant part. *Harshaw v. Harshaw*, 37 N.E.3d 978 (Ind. App. 2015) (mem.).

C.  *Bankruptcy Court Proceedings*

After losing his appeal in the state courts, Donald filed for bankruptcy. A dispute soon emerged over the whether the arbitrator had awarded Anne a money judgment or an interest in specific property. Donald asserted that it was a money judgment and therefore subject to discharge in bankruptcy. He also claimed an exemption from attachment for his retirement account. Anne responded with an adversarial complaint seeking a declaration from the bankruptcy court that she had been awarded a property interest that was not dischargeable in the proceedings.

The bankruptcy court ruled in favor of Anne. The court, recognizing all that Anne had sacrificed in her relationship with Donald, found that the arbitrator intended to give Anne a property interest. In doing so, the court took guidance from cases concerning the division of property within a marriage dissolution. See *Paxton v. Paxton*, 709 N.E.2d 31 (Ind. App. 1999); *Brown v. Pitzer*, 249 B.R. 303 (S.D. Ind. 2000). The bankruptcy court read the award as specifying the exact source of the funds, the equal distribution of Donald's pension fund and 401(k) account, and ordering Donald to transfer a portion of the property to Anne through an assignment, Qualified Domestic Relations Order, or other mechanism agreeable to both parties. These factors had also been present in the divorce cases finding that the plaintiff-spouses had been awarded property interests rather than dischargeable money judgments.

D.  *District Court Proceedings*

Donald appealed to the district court, which reversed. *In re Harshaw*, No. 15-22342, 2021 WL 406174 (N.D. Ind. Feb. 4,

2021). The district court found that the arbitrator awarded Anne a money judgment. The award said that Anne was awarded "the sum of Four Hundred Thirty-Five Thousand Dollars & 00/100 ($435,000.00), plus post-judgment interest." That is the language of a money judgment, and post-judgment interest is available under Indiana law only for judgments for money. *Id.* at *5. The district court also found that additional language about how the arbitration award might be satisfied did not transform it from a money judgment into a property award. This appeal followed.[1]

II. *Analysis*

The central issue here is whether the arbitration award gave Anne a money judgment against Donald, which would be a debt dischargeable in bankruptcy, or instead vested her with a property interest in a portion of his retirement accounts, which would not be affected by Donald's bankruptcy. The parties have not identified any disputed factual issues, so we review this question of law de novo and look to state law to determine the nature of a party's interest in property. *In re Krueger*, 192 F.3d 733, 737 (7th Cir. 1999). We agree with the district court that the better reading of the arbitration award is that it awarded Anne a money judgment, not a property interest. We reach that conclusion based on both the text of the

---

[1] The district court recognized that "generally, an arbitration award is not objectionable on the ground that the arbitrator misinterpreted applicable law." *Harshaw*, 2021 WL 406174, at *5 n.3, citing *National Railroad Passenger Corp. v. Chesapeake & Ohio Railway Co.*, 551 F.2d 136, 143 (7th Cir. 1977). Since Anne did not raise such an argument, the court declined to apply that principle to the domestic relations portions of the arbitration award that might have rested on uncertain legal grounds if the award had been understood as vesting Anne with a property interest.

award and the broader legal context of Indiana domestic relations law and the extent of an arbitrator's authority. We turn first to the text and then to the broader legal context.

A. *The Arbitrator's Award*

Here is the critical language, which appears at the end of the award in paragraph 55, and the awarding language:

> 55. The arbitrator finds, based upon the above findings and conclusions, that the plaintiff, Elizabeth A. Harshaw, is hereby awarded the sum of Four Hundred Thirty-Five Thousand Dollars & 00/100 ($435,000.00), plus post-judgment interest, which judgment is deemed to be just and due to her, upon a full consideration of all the evidence, testimony, proof, allegations, and contentions of the parties herein, and based upon Indiana law. The arbitrator further finds that payment of this amount to the plaintiff shall be accomplished by the defendant either through assignment of his pension and/or retirement benefits; or by Qualified Domestic Relations Order (QDRO), to be approved and effectuated and ordered by the Court; and/or by payment from Don to Anne in any other manner acceptable to both parties. Further, the Court hereby enters judgment in favor of Elizabeth Anne Harshaw and against Donald W. Harshaw [and] finds that this judgment should not be dischargeable in bankruptcy, since it is specifically awarded to the plaintiff as compensation, and for her support and maintenance,

> whether in full or in part, throughout the cohabitation of the parties herein.
>
> IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED that Elizabeth A. Harshaw is hereby awarded a judgment in the sum of Four Hundred Thirty-Five Thousand Dollars & 00/100 ($435,000.00) in her favor and against the defendant.

The beginning of paragraph 55 uses the language of a money judgment: "The arbitrator finds, based upon the above findings and conclusions, that the plaintiff, Elizabeth A. Harshaw, is hereby awarded the sum of Four Hundred Thirty-Five Thousand Dollars & 00/100 ($435,000.00), plus post-judgment interest." The decretal language after paragraph 55 then echoes this key language of a money judgment: "IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED that Elizabeth A. Harshaw is hereby awarded a judgment in the sum of Four Hundred Thirty-Five Thousand Dollars & 00/100 ($435,000.00) in her favor and against the defendant." See *Hilliard v. Jacobs*, 916 N.E.2d 689, 694 (Ind. App. 2009) (holding that "any *order that requires the payment of a sum of money and states the specific amount due*, whether labeled as a mandate or a civil money judgment, is a 'judgment for money'" (emphasis in original)); *United Farm Bureau Mutual Insurance Co. v. Ira*, 577 N.E.2d 588, 593 (Ind. App. 1991) ("The key to a money judgment is the statement of an amount due. A money judgment must be certain and definite. It must name the amount due.").

Also weighing on the money-judgment side of the scales is the language in the first sentence in paragraph 55 providing that Anne is entitled to post-judgment interest. As the district

court noted, under Indiana law, post-judgment interest applies only to money judgments, not to judgments partitioning property. See Ind. Code § 24-4.6-1-101; see also *Hilliard*, 916 N.E.2d at 694 ("Because the trial court's order was not a judgment for money, the post-judgment interest provisions of [§ 24-4.6-1-101] were inapplicable."). Since awards of property interests are not accompanied by post-judgment interest, this language also weighs in favor of treating the award as a money judgment rather than an award of a property interest.

In determining the nature of the interest awarded here, it is helpful to compare this case to two cases that were discussed by the bankruptcy and district courts and that involved similar issues, but arising from divorce decrees. First, the Indiana Court of Appeals explained in *Paxton*: "A money judgment 'adjudges the payment of a sum of money, as distinguished from one directing an act be done or property to be restored or transferred.'" 709 N.E.2d at 33, quoting *Money Judgments*, Black's Law Dictionary (6th ed. 1990). There, the issue was whether a divorce decree provided the husband a money judgment or property interest. The decree said that he was entitled to "the sum of $19,940.00 from the [retirement account] (in Wife's name) from the amount in said account on August 25, 1995." *Id.* at 33 (emphasis omitted). The court determined that this was "an order for transfer of property, namely the in-kind asset allocation of a portion of Wife's IRA account" because it explicitly ordered a distribution from the retirement account to the husband. *Id*.

A federal case shortly after *Paxton* reached a similar conclusion. In *Brown*, the court also examined the language of a divorce decree to determine the type of interest it provided. The critical part of the decree said: "The parties' property

shall be divided between them as set out in Paragraph 28 of this Decree. [The husband] shall cause the amount of Fifty-five Thousand Seven Hundred Seventy Dollars and Thirty-three Cents [$55,770.33] in his pension account with TIAA/CREF to be set off to [the wife] by a Qualified Domestic Relations Order…." 249 B.R. at 305.

The district court found in *Brown* that "the decree call[ed] for transfer of property to [the wife] through an in-kind asset allocation of a portion of the marital pension." *Id.* at 308. It did so because the "divorce decree direct[ed] the parties to split the marital assets equally" and ordered the wife's entitlement "from the pension fund to accomplish the equal division of property." The decree also specified "the exact source of the funds, the marital pension," and did "not allow [the husband] to choose the source of the payment nor [did] it contemplate that he [was] obligated to pay the funds personally." *Id.*

Unlike the divorce decrees in *Paxton* and *Brown*, the arbitration award here did not include language such as "the assets are hereby divided equally between the parties" or that "Anne shall receive half of Donald's retirement account" or the like. Nor did it mandate a specific source of payment. The arbitration award here simply did not contain property-division language.

Anne counters, however, by directing us to other language in the arbitration award that she says shows an intent to award her a property interest. Between the two passages that use the language of a money judgment, paragraph 55 includes this sentence: "The arbitrator further finds that payment of this amount to the plaintiff shall be accomplished by the defendant either through assignment of his pension and/or retirement benefits; or by Qualified Domestic Relations Order

(QDRO), to be approved and effectuated and ordered by the Court; and/or by payment from Don to Anne in any other manner acceptable to both parties." Anne argues that the arbitrator, through this language, specified the source of the funds to satisfy the award, along with specifying the manner and means of payment, so that her award qualifies as a property interest under *Paxton*.

We read that sentence differently. It does not identify a required source of funds or manner of payment. It instead lists options for satisfying the obligation to pay $435,000. Those options include the "assignment of his pension and/or retirement benefits," a "Qualified Domestic Relations Order" and/or "by payment from Don to Anne in any other manner acceptable to both parties." The payment of cash—legal tender for all debts, public and private—would surely suffice. The order thus allowed Donald to choose how to satisfy the award, which is also consistent with a money judgment. That is markedly different from both *Brown* and *Paxton*.

We recognize that the amount awarded was based on Donald's retirement account: one half of the increase in value during the couple's unmarried cohabitation. But understanding how the arbitrator calculated the amount does not answer the question whether the award was for a money judgment or a property interest.

Anne also emphasizes one other passage in the arbitration award. After paragraph 55, the award addresses how it should be executed by both parties and the consequences for failing to abide by it. Donald was "ordered to execute a Qualified Domestic Relations Order, if the same is allowed and/or approved by the Court, or any such similar documentation necessary to transfer or pay the plaintiff from his pension

and/or retirement benefits." This is the closest the arbitration award came to "directing an act be done or property to be restored or transferred." See *Paxton*, 709 N.E.2d at 33 (citation omitted).

This language, however, cannot overcome all the other indications in the award that it awarded a money judgment. The order to execute a QDRO is conditional on court approval. There is no indication that the court gave such approval or that a QDRO was even permissible under the circumstances of a non-married couple. The reference to "transfer or pay the plaintiff" might have enabled payment from Donald's retirement account, which was certainly one option, but it did not require payment from that source. The arbitrator had already said twice that he was awarding Anne $435,000, in the same terms that courts use to impose money judgments, and post-judgment interest, a remedy available only for money judgments. Payment from the retirement account was only one option for complying with the award. Accordingly, the language about executing a QDRO or other documentation does not persuade us that the award was a property award rather than a money judgment.

B. *Additional Considerations*

Looking beyond the text of the arbitration award, two aspects of relevant substantive law support our conclusion that the award awarded a money judgment rather than a property interest. We have already mentioned the first, that post-judgment interest is available only for money judgments, and the arbitration award here awarded post-judgment interest. See Ind. Code § 24-4.6-1-101; see also *Paxton*, 709 N.E.2d at 33.

The second is Indiana law protecting tax-deferred retirement accounts from the execution of money judgments. Ind. Code § 34-55-10-2(c)(6). The Indiana statute establishing this exemption for a debtor's tax-deferred retirement accounts reflects a fundamental public policy decision by Indiana to protect such retirement savings from judgment creditors.

At the same time, Indiana law also provides special protection for arbitration awards. A court may vacate an arbitration award obtained by fraud or corruption, or on certain other narrow grounds, but a court's authority is subject to a critical limit: "the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." Ind. Code § 34-57-2-13(a). This limitation, which is part of Indiana's enactment of the Uniform Arbitration Act, is critical to one of the key tradeoffs in arbitration—finality is valued over legal accuracy. Parties who agree to have an arbitrator resolve their dispute agree to only extremely narrow and deferential judicial review of the arbitration award.

Such narrow and deferential judicial review does not mean no review. Indiana courts have also recognized a public-policy exception to courts' obligations to enforce arbitration awards. In *School City of East Chicago v. East Chicago Federation of Teachers*, for instance, a school district challenged an arbitration award requiring it to pay union members punitive damages after a labor dispute. 422 N.E.2d 656, 661 (Ind. App. 1981). The appellate court set aside the punitive damages award against the school corporation as contrary to public policy. Accord, *Fort Wayne Education Ass'n v. Fort Wayne Community Schools*, 753 N.E.2d 672, 677 (Ind. App. 2001) (the "refusal to enforce an arbitrator's award under a collective

bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law that a court may refuse to enforce contracts that violate law or public policy," quoting *United Paperworkers International v. Misco, Inc.*, 484 U.S. 29, 42 (1987)).

In this case, the parties seem to agree that a court could not have ordered a division of Donald's retirement account because the couple were not married, meaning that a court would not have had the statutory powers of a court in a divorce proceeding. In considering how to interpret the arbitration order here, we accept that premise. But the question arises whether the *arbitrator* could have ordered division of Donald's retirement account. That would be a difficult question to answer. It poses a conflict between, on one hand, the broad powers extended to arbitrators by one statute, and the separate statute and important public policy protecting retirement accounts from being attached to pay debts, on the other.

Indiana cases do not draw sharp lines for the public policy limits to arbitrators' authority. The Indiana Court of Appeals taught most recently: "Any such public policy must be explicit, well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Wright v. City of Gary*, 963 N.E.2d 637, 651 (Ind. App. 2012) (reversing trial court's decision to vacate arbitration award), citing *Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17*, 531 U.S. 57, 62 (2000) (affirming enforcement of award that reinstated truck driver who had twice tested positive for marijuana use, and explaining the demanding standards for public-policy exception to enforcing arbitration awards). The protection of retirement savings from attachments to enforce money

judgments may well satisfy those criteria, suggesting that any arbitrator's attempt to contravene that public policy would need to be unmistakably clear. The arbitration award in this case is not such a clear statement.[2]

One final issue: The arbitrator's award also said that "this judgment should not be dischargeable in bankruptcy." That language is not controlling. An arbitrator cannot determine conclusively that an award is not dischargeable merely because he wants that to be the case. Federal bankruptcy law governs which debts are and are not dischargeable. See 11 U.S.C. § 523(a). An award will be non-dischargeable if it meets one of the statutory exceptions to discharge. The closest exception here is § 523(a)(5), which prohibits discharge for awards of domestic support, but only such support that goes to the debtor's spouse, former spouse, or child. The parties stipulated in the bankruptcy court that the arbitration award was not a domestic support obligation for purposes of § 523(a)(5), and for good reason; as a non-spouse, Anne does not meet the statutory requirements under the facts identified by the arbitrator. See 11 U.S.C. § 101(14A) (defining "domestic support obligation" for purposes of § 523(a)(5)).

---

[2] To illustrate further some of the potential complications, suppose a company's employment contract with a senior manager contains both an arbitration clause and an unreasonably broad covenant not to compete after the manager leaves the company. The manager resigns and goes into competition in violation of the unreasonably broad covenant not to compete. Suppose then that an arbitrator issues an award both enforcing the covenant and ordering forfeiture of the manager's retirement account to compensate the employer for its lost business. Would and should an Indiana court enforce such an award?

To be sure, bankruptcy courts have exclusive jurisdiction to decide the dischargeability of debts under §§ 523(a)(2), (a)(4), and (a)(6), but not under the remaining exceptions to discharge listed in § 523(a). For those, bankruptcy courts and state courts exercise concurrent jurisdiction to determine whether a debt is dischargeable. 3 Norton Bankruptcy Law & Practice § 57:70 (3d ed. 2018). Where a prior tribunal has decided the issue of dischargeability within its own jurisdiction, bankruptcy courts must give full faith and credit to that decision if it meets the necessary requirements for issue preclusion under state law. See generally 4 Collier on Bankruptcy ¶ 523.06 (16th ed. 2021); see also *National Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012) ("Issue preclusion, or collateral estoppel, bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former lawsuit and that same fact or issue is presented in a subsequent suit."). That is not the case here, however. Whether the award was a non-dischargeable support obligation for purposes of § 523(a)(5) was not actually litigated in the prior proceeding.

For these reasons, we agree with the district court that the arbitrator awarded Anne a money judgment, not a property interest in Donald's retirement account. The district court's judgment is AFFIRMED.