ATTORNEY FOR APPELLANT
Paul A. Brizendine
Floyds Knobs, Indiana

ATTORNEYS FOR APPELLEE
Timothy W. Wiseman
Lynne D. Lidke
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS ASSOCIATION
Trevor J. Crossen
Stephen M. Wagner
Carmel, Indiana

ATTORNEYS FOR AMICUS CURIAE
DEFENSE TRIAL COUNSEL OF INDIANA
Rori L. Goldman
Ty M. Craver
Indianapolis, Indiana

James D. Johnson
Evansville, Indiana

**FILED**
Apr 15 2010, 2:07 pm

**CLERK**
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 93S02-0906-EX-276

JIMMIE C. SMITH,                                    *Appellant (Plaintiff below),*

v.

CHAMPION TRUCKING COMPANY, INC.          *Appellee (Defendant below).*

Appeal from the Worker's Compensation Board of Indiana, Application No. C-172793
The Honorable Linda Hamilton, Chairperson

On Petition to Transfer from the Indiana Court of Appeals, No. 93A02-0808-EX-701

**April 15, 2010**

**Boehm, Justice.**

We hold that under Indiana's Worker's Compensation Act, an employer's worker's compensation liability for an employee's benefits terminates if the employee settles a claim against a third party for the same injury without first obtaining the employer's consent to the settlement. The Board's decision dismissing Smith's Application for Adjustment of Claim is affirmed.

## Facts and Procedural History

In August 2003, Jimmie Smith, a truck driver employed by Champion Trucking Co., was injured in an Ohio accident with a third-party motorist. Smith's initial medical expenses in the amount of $4,342.42 were paid by Champion's worker's compensation coverage. He continued to work for a year after the accident, but left Champion's employ in August 2004.[1] According to Smith, he continued to suffer pain related to the accident, and in January 2005 he applied for an adjustment of his worker's compensation claim, asserting a permanent impairment and also seeking compensation for additional medical expenses.

Meanwhile, Smith retained counsel to explore the possibility of recovering from Jeremy Bittner, the third party motorist. At some point, Smith's worker's compensation attorney notified Champion of his intention to sue Bittner, and on July 6, 2005, Champion responded by notifying Smith's attorney in the third-party matter that Champion was entitled to a lien on any settlement proceeds in the amount of Champion's worker's compensation payments to Smith. Smith settled with Bittner for $10,342 on July 22, 2005. According to Smith, he accepted the settlement because, although Bittner was 95% at fault for the accident, he had only $12,000 in liability insurance. The settlement agreement released Bittner from liability for the accident. Smith does not claim that Champion was notified of the time and place of the settlement negotiations, or had any role in the negotiation. Smith's attorney paid 75% of the medical lien amount ($3,256.74) to Champion and retained 25% as the attorneys' fee authorized by the worker's compensation statute. In August 2005, less than one month after the settlement, a neurosurgeon evaluated Smith as having suffered a 19% potential permanent impairment, which would warrant approximately $26,500 in additional worker's compensation benefits.

Champion moved to dismiss Smith's application for adjustment of claim, and ultimately the Worker's Compensation Board ruled in July 2008 that Smith's settlement with Bittner terminated Champion's liability pursuant to an "absolute bar" provision of the statute described below. The Court of Appeals reversed, holding that the provision in question did not apply to Smith's claim because his worker's compensation case had not yet been resolved. Smith v. Champion Trucking Co., 901 N.E.2d 620, 624 (Ind. Ct. App. 2009). Further, the court noted,

---

[1] The parties dispute whether Smith quit or was fired.

Champion was aware of both the settlement negotiations before they were concluded and also the pending application for adjustment of claim and Champion was therefore free to challenge the amount received from Bittner as inadequate, but failed to do so. Id. at 623. We granted transfer.

## Standard of Review

The Board's factual findings are to be affirmed if they are supported by substantial evidence. Walker v. State, 694 N.E.2d 258, 266 (Ind. 1998). "To the extent the issue involves a conclusion of law based on undisputed facts, it is reviewed de novo." DePuy, Inc. v. Farmer, 847 N.E.2d 160, 164 (Ind. 2006). Here, the Board's ruling rested largely on undisputed facts and the question is one of statutory interpretation to be reviewed de novo. Porter Dev., LLC v. First Nat'l Bank of Valparaiso, 866 N.E.2d 775, 778 (Ind. 2007).

## Settlements with Third Parties Under Indiana's Worker's Compensation Act

Section 13 of Indiana's Worker's Compensation Act (WCA), titled "Claims Against Third Persons; Subrogation; Procedures," contains a number of potentially relevant provisions.[2] Smith argues that none of the provisions of Section 13 bars his claim. Champion responds that this case is governed by language from Paragraph 1, which provides that if an injured employee has received worker's compensation and later settles a claim against a responsible third party, "*then from the amount received by the employee,*" the employer is to be reimbursed for its expenditures, "and the liability of the employer or the employer's compensation insurance carrier to pay further compensation or other expenses shall thereupon terminate." Ind. Code § 22-3-2-13 (2004) (emphasis added). Paragraph 2 has a similar provision applicable to settlements made before any worker's compensation has been paid.[3]

Smith's contention presents a pure question of statutory interpretation. "When faced with a question of statutory interpretation, we first examine whether the language of the statute is

---

[2] These provisions inexplicably consist of one section covering three printed pages of the Indiana Code, and containing nine lengthy unnumbered paragraphs, each consisting of several unnumbered sentences. For convenience, we refer to the nine unnumbered paragraphs as if they bore numbers.

[3] Smith correctly asserts that the Board erroneously relied on Paragraph 2 in denying his claim. Paragraph 2 is inapplicable here, because it deals only with situations where the employee, "not having received compensation," settles with a third party. In that event, Paragraph 2 provides that the employer "shall have no liability" to pay worker's compensation benefits to an employee who has settled with a third party. I.C. § 22-3-2-13. It is undisputed that Smith received over $4,000 in worker's compensation benefits before settling with Bittner.

clear and unambiguous. . . . The statute itself is the best evidence of legislative intent. . . . We construe statutes only where there is some ambiguity which requires construction." State v. American Family Voices, Inc., 898 N.E.2d 293, 297 (Ind. 2008). Therefore, we look first to the language of the statute to determine whether Champion is liable for additional worker's compensation benefits after Smith's settlement with Bittner. We conclude that precedent and the statute itself dictate that the "absolute bar" language of the statute is unambiguous and that it protects Champion from further worker's compensation liability.

A long line of Indiana decisions supports the proposition that an employer's worker's compensation liability terminates when the injured employee settles with a third-party tortfeasor without first obtaining the employer's consent.[4]   See Koughn v. Utrad Indust., Inc., 150 Ind. App. 110, 275 N.E.2d 572 (1971) (original Indiana case holding that termination language in WCA meant that employer's worker's compensation liability ceased after employee settled with third party); Waldridge v. Futurex Indust., Inc., 714 N.E.2d 783, 786 (Ind. Ct. App. 1999), trans. denied (employee injured by exposure to chemicals settled with manufacturer of one chemical; court held that this settlement barred employee's worker's compensation liability under Section 13); Carrier Agency, Inc. v. Top Quality Bldg. Prods., Inc., 519 N.E.2d 739, 743 (Ind. Ct. App. 1998), trans. denied; McCammon v. Youngstown Sheet and Tube Co., 426 N.E.2d 1360, 1363 (Ind. Ct. App. 1981) ("Clearly the statute provides that if an action is brought by an injured employee against a third party and a settlement is made, the liability of the employer or employer's compensation carrier to pay further compensation terminates.").

Smith argues that these "absolute bar" provisions apply only when the amount received from the third party exceeds the total worker's compensation claim. He bases this argument in part on the italicized language quoted above, claiming without further explanation that it implies that the third party damages exceed the worker's compensation claim, and only in that circumstance does the employer's liability terminate. The directive to reimburse the employer "from" the settlement proceeds suggests an assumption that the settlement amount exceeds the

---

[4] We refer to "the employer" because that is the situation in the case before us. The WCA in many places uses language that expressly includes the employer's worker's compensation carrier in some provisions applicable to the employer. For readability we omit these references to the carrier here with no implication that the provisions do not also apply to carriers.

worker's compensation benefit, but the unequivocal bar language is in no way qualified by that requirement.

The cases cited above discussing the effect of a settlement do not specifically address whether the worker's compensation claim was greater or less than the settlement received from the third party. In DePuy, Inc. v. Farmer, 847 N.E.2d 160 (Ind. 2007), we addressed the effect of a settlement of a worker's claim against a fellow employee for an intentional tort. Because the claim was against a fellow employee, Section 13 did not apply and the case was governed by common law principles. Smith argues, however, that dicta from our opinion in DePuy mandates that Paragraph 1 of Section 13 applies only when the amount of the settlement is greater than the anticipated worker's compensation claim. To the contrary, in DePuy, we indicated our understanding of this general rule and its application in Indiana: "[w]e assume without deciding that . . . this rule [that settlement with a third party bars a worker's compensation claim], announced over thirty years ago as a matter of statutory interpretation, remains the law as to claims against third parties." Id. at 168. We also noted that in each of these cases the amount of the third-party settlement might be greater than the worker's compensation benefit. We identified the issue Smith raises but expressly did not resolve it: "[w]hether [this] rule applies where the settlement is obtained before a worker's compensation award has been resolved, and is in an amount less than the anticipated worker's compensation benefit is an open question that we need not resolve here." Id.

Although we noted the unresolved issue in DePuy, we also found a general consensus that the employee's settlement with a third party without the employer's consent terminates the employer's worker's compensation liability. Id. "[I]f an employee settles a third-party claim without the employer's consent, the employee forfeits any right to future compensation." 6 Larson's Workers' Compensation Law § 116.07[2] (2009). Because the settlement with a third party terminates the employer's opportunity to recover its expenses from the party responsible for the employee's injuries, these absolute bar provisions are designed to prevent employees from settling with third parties without the employer's consent. We have previously noted that the twin purposes of Section 13 are protecting the employer by providing it with subrogation rights, and preventing double recovery by the employee. Koval v. Simon Telelect, Inc., 693 N.E.2d 1299, 1309 (Ind. 1998). In particular, the purpose of the termination provision is to prevent employees from signing away the rights of employers. Ansert Mech. Contractors, Inc. v.

Ansert, 690 N.E.2d 305, 307 (Ind. Ct. App. 1997). Most recently, in Doerr v. Lancer Transport Services, 868 N.E.2d 890 (Ind. Ct. App. 2007), trans. denied, the Court of Appeals cited this consideration in upholding the absolute bar. Because the worker had not yet received worker's compensation benefits, the absolute bar provision in Paragraph 2 of Section 13 applied. However, the court articulated the reasoning behind the absolute bar provisions in both Paragraphs 1 and 2:

> Our interpretation of Section 13, as a whole, is the legislature was attempting to protect simultaneously the financial interests of both the employee and employer. Permitting an employee to obtain a "quick and cheap" settlement with the third-party tortfeasor, and then requiring an employer to exchange unlimited benefits for whatever miniscule settlement the employee might enter, does not protect the financial interests of the employer.

Id. at 893.

This reasoning applies equally to Paragraphs 1 and 2 (i.e., whether the employee has or has not already received some benefits). More importantly for our purposes, the reason for the bar applies with greater force where the settlement is for less than the anticipated benefits. In this case, any addition or shortfall in the settlement amount will merely augment or reduce the amount of the employer's lien. Because the settlement releases the third party, ultimately the employer's money via the statutory lien, not the employee's, is at stake in the settlement negotiations. Other courts under similar benefit programs have reached the same conclusion. See Villanueva v. CNA Ins. Cos., 868 F.2d 684, 687–688 (5th Cir. 1989) (holding that the Federal Longshore and Harbor Workers' Compensation Act (LHWCA) barred further worker's compensation liability after employee settled with third party whether the settlement amount was greater or less than the anticipated worker's compensation claim); Petroleum Helicopters, Inc. v. Collier, 784 F.2d 644, 647 (5th Cir. 1986) (employee barred from seeking further compensation under the LHWCA after settling with third party for amount less than anticipated worker's compensation claim without obtaining consent of employer); see also Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 483 (1992) (under the LHWCA employee's spouse forfeited right to compensation after settling with third party without obtaining employer's consent); Colbert v. District of Columbia Dept. of Employment Servs., 933 A.2d 817, 822 (D.C. Ct. App.

2007) (injured employee's agreement to binding arbitration constituted prohibited compromise within the meaning of local worker's compensation statute, and employee was not entitled to further worker's compensation benefits from her employer after agreeing to compromise).

We are mindful that the WCA is to be "construed to effectuate its humane purposes and doubts in the application of terms are to be resolved in favor of the employee." Christopher R. Brown, D.D.S., Inc. v. Decatur County Mem'l Hosp., 892 N.E.2d 642, 649 (Ind. 2008). The result in this case is harsh, because failure to engage Champion in the settlement process with Bittner reduces Smith's potential worker's compensation benefits. But by settling without Champion's consent, Smith foreclosed Champion's ability to recover from Bittner. And Smith proceeded to consummate the settlement in the face of a long line of cases holding that his course of action could produce a forfeiture of claims to additional compensation.

Despite its unfortunate result in this case, we think the language of both Paragraph 1 and Paragraph 2 of Section 13 of the WCA unequivocally impose a bright line rule that settlement with a third party without the employer's consent bars a worker's compensation claim. Moreover, there are important reasons for the statutory scheme to insist that the employee obtain the employer's consent before settling with a third party. First, this rule eliminates satellite litigation over the adequacy of the settlement. Second, notice and consent to settlement will not often be a burdensome requirement. Although it may complicate and delay settlement negotiations in some circumstances, in many the practical limits of recovery will be evaluated equally by both employee and employer. Third, Paragraph 9 of Section 13 includes a provision that settlements made without the written consent of the employer are "invalid" unless the employer is "indemnified or protected by court order." The clear implication is that the employer's written consent to a third-party settlement will constitute a waiver of the absolute bar provisions of Section 13. Any other reading would preclude the employer, the employee, and the third party from voluntarily entering into an arrangement that is in the interests of all parties.

Finally, where the third party recovery is less than compensation benefits, it is not obvious why pursuing a third party claim is in the employee's interest. The employee's attorney, however, may have an incentive to pursue it. Section 13 provides a claimant's attorney with a higher percentage of the recovery for pursuing third party claims than is allowed by statute for

7

pursuing a worker's compensation claim.[5] This consideration may be inapplicable in this case, where different attorneys handled the third party and worker's compensation issues, but it supports the statutory choice of requiring the employer's consent across the broad range of cases.

The cases cited by Smith in support of his claim are not inconsistent with our holding today. See Roberts v. ACandS Inc., 806 N.E.2d 1, 6 (Ind. Ct. App. 2004) (where there is no evidence that the settlement with the third party has been paid or made final in any way, the employee's worker's compensation claim is not barred by the Occupational Diseases Act); Ansert, 690 N.E.2d at 307 (payment by third party that did not release third party from liability did not constitute settlement within the meaning of Section 13 termination provisions); Calvary Temple Church, Inc. v. Paino, 555 N.E.2d 190, 193 (Ind. Ct. App. 1990), abrogated on other grounds by Brown, 892 N.E.2d 642 (employee's settlement with third party occurred after the employer had already agreed to pay full worker's compensation claim); see also Barrett v. City of Brazil, 919 N.E.2d 1176 (Ind. Ct. App. 2010) (settlement with third party motorist for full amount of insurance limits treated as final judgment within the meaning of Paragraph 3 of Section 13 and therefore settlement did not terminate employer's worker's compensation liability).

Smith also contends that footnote 4 in the Doerr opinion mandates that Paragraph 1 of Section 13 is inapplicable to his claim. We disagree. The cited footnote merely points out that if the third party's liability is greater than the worker's compensation liability, the employee is permitted to keep the excess after reimbursing the employer for its worker's compensation outlay. Doerr, 868 N.E.2d at 893 n.4.

The Court of Appeals suggested that Champion could have challenged the settlement amount as "inadequate." Smith, 901 N.E.2d at 623. It is not clear how that challenge could have been mounted before the settlement was finalized given that Champion was not notified of the

---

[5] I.C. § 22-3-1-4(d) provides that attorneys who represent employees in a successful worker's compensation claim shall receive 20% of the first $50,000 of recovery; 15% of the recovery over $50,000, and 10% of the value of various medical expenses. On the other hand, Paragraph 8 of Section 13 provides that attorneys representing employees in third-party claims will receive:

> a fee of . . . 25% , if collected without suit, of the amount of benefits actually repaid after the expenses and costs in connection with the third party claim have been deducted therefrom, and a fee of . . . 33 1/3%, if collected with suit.

I.C. § 22-3-2-13.

substance or terms of the settlement negotiations. And once the settlement was reached, it released Bittner. Indiana courts have not invoked Paragraph 9 to invalidate settlements made between employees and third-party tortfeasors without the employer's consent. Doerr recently reaffirmed that rule. Doerr, 868 N.E.2d at 894. For at least twenty years the Court of Appeals has held that if an employee settles with a third party without first obtaining employer's consent, the employer's sole avenue for reimbursement of worker's compensation payments is through the employee, and the employer may not continue to pursue the third party. State v. Mileff, 520 N.E.2d 123 (Ind. Ct. App. 1988). Although some other jurisdictions do not adhere to the same interpretation of similar provisions,[6] the Court of Appeals, citing the interest of finality from the point of view of the third party, has long held that once an employee releases the third party from liability related to the injury-causing accident, the employer may not continue to pursue the third party. Given this longstanding precedent on an issue of statutory interpretation, we believe it is up to the legislature to implement any change. DePuy, 847 N.E.2d at 168; Fraley v. Minger, 829 N.E.2d 476, 492 (Ind. 2005).

**Conclusion**

The finding of the Full Worker's Compensation Board dismissing Smith's Application for Adjustment of Claim is affirmed.

Shepard, C.J., and Sullivan and Rucker, JJ., concur.

Dickson, J., concurs in result.

---

[6] In Insurance Company of North America v. Andrew, 564 N.E.2d 939 (Ill. Ct. App. 1990), the court interpreted a similar provision as preserving the employer's right to a private cause of action against the third party. See also Henning v. Wineman, 306 N.W.2d 550, 553–54 (Minn. 1981) (settlement between employee and third party, without consent of employer or employer's insurer, does not bar subsequent suit by employer or insurer against third party).