ATTORNEY FOR APPELLANTS

Jeffrey K. Graham
Bingham Farber & Wilson P.C.
Elwood, Indiana

ATTORNEYS FOR APPELLEE

William R. Groth
David T. Vlink
Fillenwarth Dennerline Groth &
Towe, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Madison County Board of
Commissioners and Madison
County Highway Department,

*Appellants-Plaintiffs/Counterclaim
Defendants,*

v.

American Federation of State
County and Municipal
Employees Local 3609,

*Appellee-Defendant/Counterclaim
Plaintiff*

November 12, 2015

Court of Appeals Case No.
33A05-1505-PL-409

Appeal from the Henry Circuit
Court

The Honorable Mary G. Willis,
Judge

Trial Court Cause No.
33C01-1502-PL-8



FILED
Nov 12 2015, 6:13 am
CLERK
of the supreme court,
court of appeals and
tax court

**Crone, Judge.**

## Case Summary

[1]     Two employees of the Madison County Highway Department ("the
Department"), who were also members of the American Federation of State
County and Municipal Employees Local 3609 ("the Union"), loafed on the job
for two consecutive days and took an excessively long lunch break on the third

day.  The Union has a collective bargaining agreement ("CBA") with the Madison County Board of Commissioners ("the County")[1] that mandates progressive discipline for minor infractions such as those committed by the employees.  Commission of a third minor infraction results in the employee being subject to discharge.  By contrast, commission of a single major infraction, such as theft, results in the employee being subject to discharge.

[2]     The County did not initiate disciplinary proceedings against the employees until the end of the third day.  The County initially alleged that the employees committed minor infractions and ultimately discharged them for what it claimed were major infractions.  The matter was submitted to arbitration pursuant to the CBA, and the Union represented the employees at the hearing.  The arbitrator determined that the employees had not committed major infractions and, based in part on what he characterized as "procedural and substantive due process concerns raised by the County's failure to promptly notify [the employees] of the wrongful nature of their workplace behavior," concluded that the appropriate punishment for the employees' misconduct was a five-day unpaid layoff.  Appellants' App. at 67.

[3]     The County asked the trial court to correct or vacate the arbitrator's award.  In response, the Union filed an answer and counterclaim.  The Union and the

[1] Because the Department is an arm of the County, we sometimes refer to these entities interchangeably or collectively as "the County" below.

County filed cross-motions for summary judgment. The trial court granted the Union's motion and denied the County's motion.

[4] On appeal, the County argues that the arbitrator exceeded his authority under the CBA by basing his award on due process concerns and by reducing the employees' punishment. We disagree. The County circumvented the CBA's progressive discipline scheme, and the CBA does not require discharge for the infractions committed by the employees or prohibit the arbitrator from reducing an employee's punishment. Therefore, we affirm summary judgment in favor of the Union.

## Facts and Procedural History

[5] Scott Amos and Travis Benfield ("the Employees") were employed as truck drivers by the Department. They were also members of the Union and its president and vice president, respectively. The Union has a CBA with the County, under which the parties "recognize the authority of the County to take appropriate disciplinary action for just cause." *Id*. at 27. Pursuant to the CBA, Department employees may be disciplined for class A minor infractions, class B minor infractions, or major infractions of work rules. Among the class B minor infractions listed in the CBA are "[u]nauthorized use or removal of County vehicles, equipment or tools for other than Department work," "[s]leeping on the job, loafing or spending excessive time at lunch periods," and "[o]ther actions of similar consequences deemed Class B minor infractions by the Superintendent." *Id*. at 44. "Under extenuating circumstances a Class B infraction may be upgraded to a major infraction." *Id*. Among the major

infractions listed in the CBA are "[t]heft or dishonesty of any kind," "[u]sing County property or equipment for personal matters not required by job duties," "[f]alsification, tampering with, removing, or misusing any County records, documents, or reports," "[l]eaving job during working hours without prior authorization," and "[o]ther actions of similar consequences deemed infraction[s] by the Superintendent." *Id.* at 45.

[6] The CBA mandates "progressive discipline" for minor infractions. *Id.* at 43, 44. For class B minor infractions, the first "Offense" results in a written warning, the second in a five-day layoff without pay, and the third in the employee being "Subject to Discharge." *Id.* at 44. By contrast, the commission of a single major infraction results in the employee being "subject to discharge." *Id.* at 45. The CBA states, "If disciplinary action is to take place, it shall be done within three (3) working days from [the] time the incident was reported to the Superintendent or Designee." *Id.* at 27.

[7] On June 23 through 25 of 2014, the Employees were assigned to the same truck to repair potholes and broken pavement on rural roads with a DuraPatch machine. On June 23, a county commissioner saw the Employees' truck and the Employees sitting idle on the road near his house. After the truck left, the commissioner "found an area approximately two and one-half feet wide by 12 feet long that had been filled and patched and noticed a similarly-sized area of the road still in need of repair." *Id.* at 51. The commissioner reported his observations to the Department superintendent. On June 24, the commissioner again saw the truck and the Employees sitting idle. After they filled a few

potholes and departed, the commissioner again reported his observations to the Department superintendent. On June 25, the GPS tracking device on the Employees' truck indicated, and a fellow Department employee personally observed, that the truck was parked near two restaurants for over an hour. Under the CBA, employees are given a "half hour at mid-day, without pay, to eat lunch[.]" *Id.* at 38.

[8] When the Employees returned the truck to the Department garage on June 25, they "were given Disciplinary Notice Written Warnings dated Monday, June 23, 2014," which "state[d] as the reason for the discipline 'On 6/23/14 Minor Infraction Class B 5 sleeping on the job (loafing) or spending excessive time at lunch periods.'" *Id.* at 52. On June 26, they were suspended without pay in a memorandum from the Department superintendent that reads as follows:

> This is to inform you today your [sic] suspended without pay pending an investigation that you have committed violations of the [CBA] and Madison County Personnel Policies and Indiana employment statutes [sic].
>
> It was reported that you are not performing assigned work which may constitute a violation of the Indiana Ghost-employment law. It is [sic] come to my attention via the County Highway Department GPS tracking devises [sic] and witness reports that you were parked for extended periods of scheduled work time and did not perform any work on June 23, June 24, and June 25, 2014. Based on this information County is investigating this matter is [sic] continuing violation of Coast [sic] employment statutes.
>
> Once the investigation is complete you will be notified of the

findings and recommendations, and will be afforded the opportunity to respond.

*Id.* (excerpted from arbitration award; some "[sic]" designations added).

Pursuant to the CBA, the Employees were given a pre-deprivation hearing on July 2. Two weeks later, they were given a memorandum that reads in pertinent part as follows:

> Please be advised that based on our findings stemming from an investigation of your actions on June 23, 24 and 25, 2014, your employment with Madison County is terminated effective immediately.
>
> Based on our findings, you have violated the Ghost Employment policy found on page 72-73 of the Madison County Policies Hymnbook [sic] (the "Employee Handbook") by submitting timecards which purport to show you working during times that is [sic] contradicted by substantial evidence, including but not limited to, eyewitness testimony in [sic] GPS tracking data. Pursuant to the Employee Handbook, disciplinary action for violations of the Ghost Employment policy may include termination.
>
> In addition, based on our findings, you have committed the following Major Infractions as defined by the [CBA]:
>
> • Theft or dishonesty of any kind
>
> • Using County property or equipment for personal matters not required by job duties
>
> • Falsification, tampering with, removing, or misusing any County records, documents, or reports.

• Leaving job during working hours without prior authorization.

Pursuant to the [CBA], employees who commit Major Infractions shall be subject to discharge.

Be further advised that we will be referring this matter to the Madison County Prosecutor. In addition, we may seek reimbursement of the wages paid to you that were not earned.

*Id*. at 53 (excerpted from arbitrator's award).

[10] The Employees availed themselves of the CBA's grievance procedures, and the matter was ultimately submitted to arbitration. The CBA states, "The arbitrator shall have no authority to add to, change, delete, or otherwise modify any part of this agreement. Any decision of the arbitrator shall be final and binding on all parties." *Id*. at 26. At the arbitration hearing, the Employees were represented by the Union. The parties stipulated that the issue before the arbitrator was as follows: "Were the discharges of [the Employees] for just cause? If not, what is the proper remedy?" *Id*. at 53.

[11] In January 2015, the arbitrator issued an award containing extensive factual findings.[2] The arbitrator found that the County had failed to prove that the Employees had "engaged in misconduct that can be accurately characterized as

---

[2] The Union's brief contains a link to the arbitrator's online biography. We decline the Union's invitation to consider material that is both irrelevant and outside the record on appeal.

ghost employment" as defined in the Employee Handbook. *Id*. at 63. The arbitrator further found,

> Like the charge of ghost employment, the four categories of Major Infractions misconduct with which [the Employees] are charged do not accurately capture the actions the County contends they engaged in that warranted their discharges. Thus, there is no evidence that [the Employees] used County equipment for personal matters not required by their job duties; or that they falsified, tampered with, removed or [misused] any County records, documents or reports. Furthermore, there is no evidence to indicate that the [Employees] left or abandoned their jobs during work hours on the three days in question, and there is no proof that they actually stole any County property or engaged in blatant acts of dishonesty equivalent to stealing County property.
>
> It is true that viewed in the very broadest possible sense, [the Employees'] alleged acts of malingering on the job on June 23 and 24, 2014; as well as the excessively-long lunch period the County claims they took on June 25, 2014, could be deemed dishonesty or stealing wages that they did not earn while they were sitting idle instead of working. Nevertheless, the County has not satisfactorily proven that the Major Infractions element of the Minor Infractions/Major Infractions disciplinary scheme agreed to by the Parties and memorialized in their [CBA] is sufficiently elastic to encompass the purported acts of misconduct engaged in by [the Employees] on the days in question.

*Id.*[3]

[12]     The arbitrator went on to state,

> The bifurcated disciplinary scheme reflected in the Minor
> Infractions/Major Infractions table of misconduct offenses
> paradigm set out in the [CBA] clearly demonstrates the Parties'
> mutual agreement that when determining what disciplinary
> action is warranted by particular acts of employee misconduct,
> the first step is to properly categorize any such misconduct as
> either a "Minor Infraction [] Class A," "Minor Infraction Class
> B," or a "Major Infraction." Stated simply, the misconduct with
> which [the Employees] are charged does not rise to, or near the
> level of perniciousness and malice reflected in the 13 specific acts
> of misconduct set out in the Major Infractions element of the
> contractual disciplinary scheme.
>
> In fact, the acts of misconduct with which [the Employees] are
> charged are specifically addressed in the Minor Infraction Class B
> element of the contractual disciplinary scheme. Those specific
> offenses, set out at Paragraph 5 of the Minor Infraction Class B
> list of offenses, are "…, loafing or spending excessive time at
> lunch periods." This is precisely what the County claims [the
> Employees] did on the three days in question.[4] Therefore, if the

---

[3] In a footnote, the arbitrator stated,

> Thus, for example even if proven to have constituted misconduct warranting discipline, the
> [Employees' actions] would not rise to the same level of perniciousness or malice as evidenced
> by the possession or use of alcohol and/or drugs while on duty; willfully damaging or defacing
> County property or equipment; insubordination evidenced by willfully disobeying a supervisor's
> direct order; fighting on the job or on County property; or possession of firearms or other
> weapons while on duty or on County property.

Appellants' App. at 63-64.

[4] In a footnote, the arbitrator stated, "It warrants mention that the Written Warnings, dated June 23, 2014
and issued to the [Employees] on June 25, 2014, cite as the reason for those warnings 'Minor Infraction Class
B 5 sleeping on the job (loafing) or spending excessive time at lunch periods.'" Appellants' App. at 64
(citation to exhibits omitted).

> Arbitrator determines that the [Employees] actually engaged in those acts of loafing and/or spending excessive time on their lunch break then the disciplinary steps agreed to by the Parties in the Minor Infraction Class B portion of the contractual misconduct offenses paradigm would be applicable. The Major Infractions penalty of summary discharge on the first offense is not applicable in this Case. Thus, the County must prove that the actions of [the Employees] on the three days at issue nevertheless warranted their summary discharge, or some alternative less severe form of discipline.

*Id*. at 64.

[13]    Ultimately, the arbitrator determined that the County had "failed to prove that the discharges of [the Employees] were for just cause" but that the Employees "did engage in repeated acts of misconduct that violated Paragraph 5 of the Minor Infraction Class B table of misconduct offenses set out in the Parties' [CBA]" and that "significant discipline [was] warranted." *Id*. at 67.[5] Consequently, the arbitrator overturned the discharges and imposed the following discipline:

> The gravity of the intentional acts of misconduct engaged in by [the Employees] is aggravated by their repetition over three consecutive workdays and by the fact that both [the Employees]

---

[5] *See* Appellants' App. at 66 ("The County's complaint regarding the behavior of [the Employees] on June 23 and 24, 2014, is well-enunciated by Superintendent Harless' statement on cross examination that he was 'dissatisfied with the quantity of the work and … [the] report [of] the truck sitting still and excessive breaks'. That [the Employees] on June 23 and 24 did in fact loaf, sit idle for moments of time, and work at a pace slower than expected in the operation of the DuraPatch truck to which they were assigned is clearly established by the relevant evidence in the hearing record.") (citation to transcript omitted); *id*. at 67 ("[The Employees] offered no plausible explanation as to why they took a 65 minute lunch break sitting idle in that strip mall parking lot on what was supposed to have been a 30-minute lunch break [on June 25].").

hold high Union office and therefore should be expected to set an example for all bargaining unit employees. Having balanced the seriousness of the [Employees'] intentional, repeated acts of misconduct on the three days at issue against the mitigating factor of the procedural and substantive due process concerns raised by the County's failure to promptly notify them of the wrongful nature of their workplace behavior before the end of their shift on June 25, 2014, the undersigned has determined that the appropriate disciplinary penalty for the misconduct engaged in by the [Employees] during the time period from June 23-25, 2014, is the second offense penalty for Minor Infraction Class B offenses agreed to by the Parties in the [CBA] – a five-day layoff without pay.

*Id*.

[14]     Thereafter, the County filed a motion with the trial court for application to correct or vacate the arbitrator's award. In response, the Union filed an answer and counterclaim. The Union and the County filed cross-motions for summary judgment. The trial court summarily granted the Union's motion and denied the County's motion and "confirmed" the arbitrator's award "in all respects." *Id*. at 4. The County now appeals.

## Discussion and Decision

[15]     The County asserts that the trial court's summary judgment ruling is erroneous.

When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). All facts established by the designated evidence and reasonable inferences drawn from those

facts are construed in favor of the nonmoving party. The fact that the parties filed cross-motions for summary judgment does not alter our standard of review. We consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law.

*Wright v. City of Gary*, 963 N.E.2d 637, 643 (Ind. Ct. App. 2012) (some citations omitted), *trans. denied.*

[16] Indiana's Uniform Arbitration Act ("the Act") "provides a mechanism for enforcing agreements to arbitrate and for securing judicial review and enforcement of awards made." *Id.* "Judicial review of an arbitration award is extremely narrow in scope." *Id.* An award should be corrected or vacated only when one of the grounds specified by the Act for correcting or vacating an award is shown. *See id.* A party who seeks to correct or vacate an arbitration award under the Act bears the burden of proving the grounds for doing so. *See id.* "Courts may not review the merits of arbitration awards de novo." *Id.* Our review of an arbitration award is limited to determining whether the party who seeks to correct or vacate the award has established any of the grounds for challenge permitted by the Act. *See id.*

[17] "An arbitrator's award is enforceable so long as it draws its essence from the collective bargaining agreement." *Fort Wayne Cmty. Sch. v. Fort Wayne Educ. Ass'n*, 490 N.E.2d 337, 340 (Ind. Ct. App. 1986).

> A court will vacate an award only when the arbitrator's words manifest an infidelity to this obligation. It is only when the arbitrator must have based his award on some body of thought,

or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference) that the award can be said not to draw its essence from the collective bargaining agreement. We resolve any reasonable doubt regarding whether an award draws its essence from a collective bargaining agreement in favor of enforcing the award. Therefore, we will vacate an award only if there is no possible interpretive route to the award.

*Citizens Gas & Coke Util. v. Local Union No. 1400, Int'l Bhd. of Elec. Workers*, 874 N.E.2d 391, 397 (Ind. Ct. App. 2007) (citations, brackets, and quotation marks omitted).

[18] Pursuant to Indiana Code Section 34-57-2-14(a), a court "shall modify or correct the award where … (2) the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted[.]" And Indiana Code Section 34-57-2-13(a) provides that a court "shall vacate an award where … (3) the arbitrators exceeded their powers and the award can not be corrected without affecting the merits of the decision upon the controversy submitted[.]" The County contends that the arbitrator in this case "materially changed the CBA" and thus exceeded his authority in two respects: (1) by finding mitigating due process concerns based on the County's compliance with the CBA's three-day deadline for taking disciplinary action against the Employees; and (2) by not upholding the discharges based on each employee's commission of three class B minor

infractions. Appellants' Br. at 4.[6] Thus, argues the County, the arbitration award should be either corrected or vacated.

[19] We first observe that the County does not challenge the arbitrator's authority to determine that the offenses committed by the Employees were actually class B minor infractions and not major infractions as alleged by the County.[7] We further observe that the CBA mandates progressive discipline for class B minor infractions and that the County did not follow that mandate here. The County was put on notice that the Employees were loafing on June 23, but instead of promptly taking disciplinary action for that class B minor infraction, it waited until after the Employees committed two additional class B minor infractions to do so. This procedure circumvented the CBA's progressive discipline scheme and deprived the Employees of adequate notice and an opportunity to reform their conduct. *See Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 403 (7th Cir. 1992) (stating that purpose of progressive discipline is "to give the employee adequate notice and an opportunity to correct any deficiencies"). Under these

---

[6] As stated above, the parties stipulated that the issue before the arbitrator was whether the Employees were discharged for just cause and, if not, what the proper remedy should be. The County does not specifically argue that the Employees were discharged for just cause. Therefore, we do not address the Union's argument about what constitutes just cause.

[7] Nor does the County allege "extenuating circumstances" sufficient to upgrade any of the minor infractions to a major infraction under the CBA. Appellants' App. at 44.

circumstances, we find ample justification for the arbitrator's due process concerns, which are drawn from the essence of the CBA.[8]

[20] Also, as the Union points out, the CBA states that the commission of a third class B minor infraction results in an employee being "Subject to Discharge"; it does not provide for automatic discharge. Appellants' App. at 44.[9] And finally, the CBA does not prohibit an arbitrator from modifying an employee's punishment; it merely prohibits modification of the CBA itself. The arbitrator did not modify the CBA by imposing a lesser punishment than discharge in this case.

[21] In sum, the County has established no basis for correcting or vacating the arbitrator's award. Therefore, we affirm the trial court's summary judgment ruling.

[22] Affirmed.

May, J., and Bradford, J., concur.

---

[8] This is not to suggest that the County must take disciplinary action against an employee immediately after an incident is reported, or that an employee may not be discharged for committing three class B minor infractions within a short period of time. But the County should be mindful of the purpose of the progressive discipline scheme mandated by the CBA and the risks of delaying disciplinary action or circumventing that scheme.

[9] The same is true for a major infraction. Appellants' App. at 45.