## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 19 2017, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Jeffrey K. Graham
Micha R. Buffington
Graham, Regnier, Farrar & Wilson, P.C.
Elwood, Indiana

ATTORNEYS FOR APPELLEE

William R. Groth
David T. Vink
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Madison County Board of Commissioners and Madison County Highway Department,

*Appellants-Defendants,*

v.

American Federation of State County and Municipal Employees Local 3609,

*Appellee-Plaintiff.*

April 19, 2017

Court of Appeals Case No. 33A01-1609-PL-2136

Appeal from the Henry Circuit Court.
The Honorable Jack Tandy, Senior Judge.
Cause No. 33C01-1502-PL-8

**Friedlander, Senior Judge**

[1] Madison County appeals the trial court's award of attorney's fees. To place the present appeal and our decision in proper context, the following is a summary of the underlying facts and procedural history of this case derived from our

opinion in the first appeal involving these parties, reported in *Madison County Board of Commissioners v. American Federation of State County and Municipal Employees Local 3609*, 45 N.E.3d 868 (Ind. Ct. App. 2015), *trans. denied*, and from the material presented here on appeal.

[2]     Scott Amos, president of the American Federation of State County and Municipal Employees Local 3609 (the Union), and Travis Benfield, vice-president of the Union, were employed by the Madison County Highway Department (the Department) as truck drivers. On June 23 through June 25 of 2014, they were assigned to the same truck to repair potholes and broken pavement.

[3]     On June 23rd and 24th, a county commissioner observed the truck to which Amos and Benfield were assigned idling for some time on the road near his house. The commissioner observed that some, but not all, of the road had been repaired before the employees left the location at the end of both days. Each day the county commissioner reported his observations to the Department superintendent; however, neither Amos nor Benfield were notified or warned of the complaints/allegations. On June 25th, the GPS tracking device on the truck used by Amos and Benfield indicated, and another Department employee observed, that the truck used by the two was parked near two restaurants for over an hour. Under the Collective Bargaining Agreement (CBA) entered into by the County and the Union, Department employees are allowed a half hour at mid-day without pay to eat lunch. Appellants' App. Vol. II, p. 52.

[4] When Amos and Benfield returned the truck to the Department garage on June 25th, they were given "Disciplinary Notice Written Warnings dated Monday, June 23, 2014," stating that they were being disciplined for a Class B 5 minor infraction occurring on June 23, 2014 for sleeping on the job or loafing, or spending excessive time at lunch. 45 N.E.3d at 871; Appellants' App. Vol. II, p. 59 (defining Class B minor infractions and discipline), and p. 67. On June 26, 2014, Amos and Benfield were suspended without pay pending an investigation into their alleged violations of the CBA, county personnel policies, and Indiana employment statutes. The allegations supporting their suspension contended Amos and Benfield were guilty of ghost employment for failure to perform their duties while on the job. Appellants' App. Vol. II, p. 67.

[5] The CBA between the Union and the County recognized the County's authority to take appropriate disciplinary action for just cause. *Id.* at 69-70. Under the CBA, employees may be disciplined for class A minor infractions, class B minor infractions, or major infractions of work rules. A class B infraction includes sleeping on the job, loafing or spending excessive time at lunch periods, and other actions deemed class B infractions by the Department superintendent. *Id.* p. 59. In unusual situations, class B infractions may be elevated to a major infraction. Major infractions include: theft or dishonesty of any kind; using County property or equipment for personal matters not required by job duties; falsification, tampering with, removing, or misusing any County records, documents, or reports; leaving the job during working hours without

prior authorization; and, other actions of similar consequences deemed so by the Department superintendent. *Id.* at 60.

[6] A first violation classified as a class B infraction offense results in a written warning, the second offense results in a five-day layoff without pay, and the third offense results in the employee being subject to discharge. *Id.* at 59. On the other hand, the commission of a single major infraction results in the employee being subject to discharge. *Id.* at 60-61. Disciplinary action, if any, shall take place within three working days from the time the incident was reported to the Department superintendent or the designee. *Id.* at 58-59.

[7] After a pre-deprivation hearing, held per the terms of the CBA, Amos and Benfield were notified that their employment was terminated immediately due to findings that they had committed ghost employment by submitting timecards representing that they were working, where the evidence showed they were not. *Id.* at 67-68. The notice further stated that they had committed major infractions, which subjected them to discharge and that the matter was being referred to the prosecutor's office. *Id.* at 68. The major infractions found were those examples mentioned above.

[8] Amos and Benfield utilized the CBA's grievance procedures and the matter was submitted to arbitration. According to the CBA, "[t]he arbitrator shall have no authority to add to, change, delete, or otherwise modify any part of this agreement. Any decision of the arbitrator shall be final and binding on all parties." 45 N.E.3d at 872. The question that was stipulated to by the parties

and presented to the arbitrator was, "Were the discharges of [the Employees] for just cause? If not, what is the proper remedy?" *Id.*; Appellants' App. Vol. II, p. 68.

[9] The arbitrator issued an award finding that the County had failed to prove that Amos and Benfield had engaged in ghost employment. The arbitrator also found that Amos' and Benfield's actions did not fall within the categories of major infractions. Instead, the arbitrator found that the employees had committed the misconduct set forth in the initial written warnings—sleeping or loafing on the job and taking an excessively long lunch break—which were identified as class B minor infractions in the written warning delivered to Amos and Benfield. The arbitrator adjusted the sanction of immediate termination, reinstating Amos' and Benfield's employment, and imposed a five-day layoff without pay as the sanction for the misconduct found by the evidence presented.

[10] Next, even though the CBA provided that the decision of the arbitrator was final and binding on all of the parties, the County filed an application to correct or vacate the arbitrator's award. Under Indiana Code section 34-57-2-14 (1998), a provision of Indiana's Uniform Arbitration Act, a trial court within the appropriate time period, "shall modify or correct the [arbitrator's] award where: (1) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award; (2) the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the

issues submitted; or (3) the award is imperfect in a matter of form, not affecting the merits of the controversy. The County contended that the arbitrator had exceeded his authority by basing his decision on due process concerns and by reducing Amos' and Benfield's punishment. The Union, which represented and continues to represent Amos and Benfield throughout this matter, filed an answer and counterclaim, which included a request for attorney's fees. Both parties filed cross-motions for summary judgment.

[11] The trial court summarily granted the Union's motion, denied the County's motion, and confirmed the arbitrator's award in all respects. More specifically, the trial court ordered that "[a]ny disputes regarding the calculation of back-pay and attorney fees are remanded to the Arbitrator." Appellants' App. Vol. II, p. 86.

[12] The County appealed and a panel of this Court affirmed the trial court's judgment. We found that the trial court appropriately followed the standard of review in declining to review the merits of the decision of the arbitrator de novo, and found that the arbitrator did not modify the conditions of the CBA, but appropriately exercised his authority to modify the sanction imposed based upon the question presented to him. The Court found that the County had "established no basis for correcting or vacating the arbitrator's award." *Madison Cty Bd. of Com'rs*, 45 N.E.3d at 876.

[13] Undeterred, the County sought transfer of the matter to the Indiana Supreme Court. Transfer was unanimously denied on February 17, 2016. *See Madison*

*Cty Bd. of Com'rs v. Am. Fed'n of State Cty and Mun. Emp's. Local 3609*, 45 N.E.3d 1211 (Ind. 2016).

[14] Both parties appeared before the arbitrator for a calculation of back-pay and attorney's fees. Appellants' App. Vol. II, p. 10. The parties had stipulated that the Union's attorney's fees were $23,992.50, which included trial and appellate fees. In his supplemental award of April 27, 2016, the arbitrator concluded that he lacked statutory or contractual authority to order the County to pay the Union's attorney's fees in successfully defending the County's attempt to vacate his award. *Id.* The arbitrator did explicitly find that "the County's obstinate and repeated efforts to secure a vacatur order from all three levels of the Indiana judiciary *can accurately be labeled as frivolous, groundless, and unreasonable.*" *Id.* at 11. The arbitrator further expressed that a court of competent jurisdiction, making the same finding, might well determine that the payment of attorney's fees from the County to the Union would be justified. *Id.* He concluded by stating, "because the Arbitrator has been shown no legal authority for such an arbitral remedy, the Union's request for attorney's fee[s] must be denied in this forum. *Id.* at 146.

[15] On May 2, 2016, the Union filed a "Submission of Arbitrator's Supplemental Award on Remand, Motion for Attorneys' Fees Pursuant to Ind. Code § 34-52-1-1(b), and Motion for Entry of Final Judgment," along with a supporting memorandum of law and later filed a motion for special findings. *Id.* On May 27, 2016, the County filed its memorandum in support of its own motion for attorney's fees for defending the Union's request along with a brief in support of

the request. The Union also filed a response in opposition to the County's motion for attorney's fees.

[16] The trial court held a hearing on the motions for attorney's fees and back wages. With respect to attorney's fees, the Union argued that the trial court should find as the arbitrator did that the County's decision to pursue complete judicial review of the arbitrator's decision was frivolous, groundless, and unreasonable in light of the finality of the arbitrator's decision per the terms of the CBA.

[17] The County contended that the Union's claim for attorney's fees was barred by res judicata, arguing that since the arbitrator concluded he was without jurisdiction to issue an award of attorney's fees, he had effectively denied the request on the merits. The County also argued that the time to have appealed this denial of the Union's request for attorney's fees had passed pursuant to the time limitations of the appellate rules. Additionally, the County claimed that a request for appellate fees was waived because the Union did not seek appellate attorney fees under Indiana Appellate Rule 66(E) as the matter proceeded through the appellate process. The County also argued that the trial court had no authority to award a prevailing party appellate attorney's fees for defending against a groundless appeal.

[18] On August 17, 2016, the trial court issued its findings of fact, conclusions thereon and judgment, finding that the County's litigation was frivolous, groundless, and unreasonable. The court granted the Union's motion for

attorney's fees, entering a final judgment against the County in the stipulated amount of $23,992.50—the Union's attorney's fees expended in the trial court and on all appellate levels defending the County's attempt to vacate the arbitrator's award.

[19] The County appeals raising the following issues: (1) whether the trial court could grant appellate attorney fees without a mandate from the appellate court; (2) whether a trial court may grant trial attorney fees where they were not requested, not authorized by contract or statute, and were specifically denied by the arbitrator; and, (3) whether the County's act of seeking vacatur on the ground that the arbitrator exceeded its authority is frivolous, groundless, or unreasonable. The Union contends that the trial court's award of trial and appellate attorney's fees was correct and seeks attorney's fees under Indiana Appellate Rule 66(E) for the present appeal.

[20] First, we consider the County's argument that the trial court could not issue an award of appellate attorney fees without being directed to do so by this Court. Indiana's general rule, also known as the American Rule, is that each party to the litigation must pay his or her own attorney's fees. *City of Jeffersonville v. Envtl. Mgmt. Corp.*, 954 N.E.2d 1000 (Ind. Ct. App. 2011). An award of attorney's fees may be authorized by contract, rule, statute, or agreement, nonetheless. *Id.* The Union sought attorney's fees under Indiana's Attorney Fee Statute, which provides in pertinent part as follows:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

Ind. Code § 34-52-1-1(b) (1998).

[21] The County's contention presents a question of statutory interpretation. "When faced with a question of statutory interpretation, we first examine whether the language of the statute is clear and unambiguous . . . . The statute itself is the best evidence of legislative intent . . . . We construe statutes only where there is some ambiguity which requires construction." *Smith v. Champion Trucking Co., Inc.*, 925 N.E.2d 362, 365 (Ind. 2010) (quoting *State v. American Family Voices, Inc.*, 898 N.E.2d 293, 297 (Ind. 2008)).

[22] The County argues that the statute should be construed to read as solely providing for an award of attorney's fees at the trial level. We believe that this reading of the statute is too narrow. The express language of the statute is clear and provides no such limitations. If the legislature had intended a narrower reading, it would have drafted the statute to reflect that intention.

[23] Additional support for this interpretation can be found in cases deciding whether an award under other statutes can include an award of appellate attorney fees. In *Benge v. Miller*, 855 N.E.2d 716 (Ind. Ct. App. 2006), we held that an award under Indiana Code section 34-24-3-1 (1998) (Crime Victim's Relief Act), and Indiana Code section 24-5-0.5-4 (1995) (damages for deceptive

consumer sales), included appellate attorney's fees where both statutes contained language about awarding a reasonable attorney's fee. We followed this holding in *Heartland Resources, Incorporated v. Bedel*, 903 N.E.2d 1004 (Ind. Ct. App. 2009), with respect to the Crime Victim's Relief Act.

[24] The language of Indiana's Attorney Fee Statute is similar in that it authorizes an award of attorney's fees. The trial court had the authority pursuant to statute to award appellate attorney's fees and did not abuse its discretion when it did.

[25] The County argues that the Union's request for appellate fees is waived because the Union did not request them during the original appeal. The County argues that it had no opportunity to defend against the Union's request. Indiana Appellate Rule 66 (E) provides, "The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution." By the plain language of the rule, it is not the exclusive means by which a party can recover appellate attorney's fees. Indeed, attorney's fees may be recovered by contract, rule, statute, or agreement. *City of Jeffersonville*, 954 N.E.2d 1000.

[26] With respect to the County's argument that it had no opportunity to defend against the Union's request, we observe that the County stipulated to the amount of the Union's attorney's fees, which included appellate attorney's fees. Additionally, the County had the opportunity to challenge the Union's request

when the matter was presented to the arbitrator, who declined to rule on the merits of the request for jurisdictional reasons, and the trial court, which entered the order deciding the issue.

[27] Also, the County asserts that the arbitrator denied the Union's request for attorney's fees on the merits, and as such, the trial court abused its discretion by granting the Union's request for fees. The language used in the arbitrator's award clearly expressed that if the arbitrator had the authority to rule on the Union's request for fees, it would have granted that request. Because the arbitrator lacked contractual or statutory authority, and the Union presented no evidence to suggest that the arbitrator had such, the arbitrator concluded that "the Union's request for attorney's fee[s] must be denied in this forum." Appellants' App. Vol. II, p. 146.

[28] The principle behind the doctrine of res judicata is the prevention of repetitive litigation of the same dispute. *MicroVote Gen. Corp. v. Ind. Election Com'n*, 924 N.E.2d 184 (Ind. Ct. App. 2010). For a claim to be precluded under this doctrine, four requirements must be satisfied, of which the following one is dispositive in this action: the former judgment must have been rendered on the merits. *Id.* The arbitrator's decision plainly limits his denial of the Union's request to his lack of authority to decide the issue on the merits.

[29] The County further argues that the Union was required to file an action for vacatur of the arbitrator's decision on the issue of attorney's fees instead of making its application to the trial court. We disagree. The Union sought

enforcement of the arbitrator's award after the County's efforts on appellate review had been exhausted. After the arbitrator concluded that he was without authority to determine the issue of attorney's fees on the merits, the Union proceeded under a statute authorizing a trial court to decide the issue. We find no abuse of discretion.

[30] Next, the County argues that a trial court may not grant trial attorney fees where they were not requested, not authorized by contract or statute, and were specifically denied by the arbitrator. The same analysis, used with respect to appellate attorney's fees, applies with respect to this issue. The trial court was authorized by statute to determine this issue on the merits. We find no abuse of discretion here.

[31] The County also argues that the trial court abused its discretion by awarding trial and appellate attorney's fees because its pursuit of appellate review of the arbitrator's award was not groundless, frivolous, or unreasonable.

[32] Appellate review of the decision to award attorney's fees under the statute involves multi-level review. *Purcell v. Old Nat. Bank*, 972 N.E.2d 835 (Ind. 2012). First, we review the trial court's findings of fact under the clearly erroneous standard, and legal conclusions about whether the litigant's claim was frivolous, unreasonable, or groundless are reviewed de novo. *Id.* The trial court's decision to award attorney's fees and any amount thereof is reviewed for an abuse of discretion. *Id.* A trial court abuses its discretion if its decision is

clearly against the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law. *Id.*

[33] A claim is groundless where no facts exist to support the legal claim relied on and presented by the losing party. *Id.* Claims or defenses are frivolous (a) if made primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer does not make a good faith and rational argument on the merits of the action, or (c) if the lawyer does not support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. *Wolfe v. Eagle Ridge Holding Co., LLC.,* 889 N.E.2d 521 (Ind. Ct. App. 2007). Claims or defenses are unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified. *Lockett v. Hoskins*, 960 N.E.2d 850 (Ind. Ct. App. 2012).

[34] By statute, the County, in its request for vacatur, had to establish that: (1) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award; (2) the arbitrators had awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or (3) the award is imperfect in a matter of form, not affecting the merits of the controversy. Ind. Code § 34-57-2-14. The parties, by entering into the CBA, agreed that the arbitrator's decision was final. During the appeal process, the County consistently argued that the arbitrator exceeded his authority by basing his decision to reinstate Amos' and Benfield's employment and impose a five-

day suspension, in part, on due process concerns. The County also challenged the new sanction as being in excess of authority. The question presented to the arbitrator was "Were the discharges of [the Employees] for just cause? If not, what is the proper remedy?" Appellants' App. Vol. II, p. 68. The arbitrator's decision squarely addressed the questions placed before him. The County's claim at trial and on appeal was groundless. Further, the County did not establish any of the conditions for vacatur.

[35] The trial court's findings of fact and conclusions thereon reveal its own rationale for finding that the County's actions in seeking vacatur of the arbitrator's award were frivolous, groundless, and unreasonable. While doing so, the court noted that a panel of this Court had concluded that "the County has established no basis for correcting or vacating the arbitrator's award." *Madison Cty Bd. of Com'rs*, 45 N.E.3d at 876. The court also observed that the arbitrator opined, without deciding, that the County's actions could be characterized by a court of competent jurisdiction to be frivolous, groundless, and unreasonable. At some point during the County's efforts, after losing before the arbitrator, the trial court, the Indiana Court of Appeals, and the Indiana Supreme Court, the County should have realized that it was continuing to litigate after its claim had clearly become frivolous, unreasonable, or groundless.

[36] The Union has asked for appellate attorney fees for the present appeal under Indiana Appellate Rule 66(E). We first observe that our discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited to instances when

an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Thacker v. Wentzel*, 797 N.E.2d 342 (Ind. Ct. App. 2003). We strive to use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Id.*

[37] In this present appeal the County raised the following issues: (1) whether the trial court could grant appellate attorney fees without a mandate from the appellate court; (2) whether a trial court may grant trial attorney fees where they were not requested, not authorized by contract or statute, and were specifically denied by the arbitrator; and, (3) whether the County's act of seeking vacatur on the ground that the arbitrator exceeded its authority is frivolous, groundless, or unreasonable.

[38] The County stipulated to the amount of the Union's attorney's fees at trial and on appeal. The Union's request for attorney's fees was made pursuant to statute. The award of appellate attorney's fees by a trial court has been allowed under other statutes without an order from this Court. The award of trial attorney's fees is authorized by the statute under which the Union proceeded. Additionally, the County's conduct in its quest for vacatur has been rejected at every step of this litigation. Consequently, we award the Union attorney's fees for defending this present appeal and remand to the trial court for a calculation of the same.

Judgment affirmed and remanded.

[39]     Bailey, J., and Robb, J., concur.